**David L. BALVIN, Plaintiff and Appellee,**

v.

**Dolores A. BALVIN, Defendant and Appellant.**

**No. 12795.**

Supreme Court of South Dakota.

Considered on briefs Oct. 22, 1980.
Decided Feb. 11, 1981.

---

D. R. Bleeker of Shandorf, Bleeker, Boldt & Koch, Mitchell, for plaintiff and appellee.

John P. Blackburn of Blackburn Law Offices, Yankton, for defendant and appellant; Michael D. Stevens of Blackburn Law Offices, Yankton, on the brief.

WOLLMAN, Chief Justice.

The trial court granted a divorce to both Dolores Balvin (appellant) and David Balvin (appellee). Dolores appeals from those portions of the judgment relating to property division, alimony award and attorney fees. We affirm in part, reverse in part, and remand.

The parties were married December 27, 1950. The marriage resulted in five children, all of whom are now of legal age.

At the time of the parties' marriage, Dolores was teaching school and David was employed by his father, a farmer. Neither party had much property at the time they were married, and they lived with appellee's parents for about a year. The parties then moved into a house that they had built on one acre of land that was given to David by his parents. This house was built utilizing $5,000 loaned to David by his parents.

David testified that this loan was never repaid. Nine years later the parties moved into a house located on the family farm. At some point during the marriage, David took over his father's farming operation. Dolores taught school for approximately ten and one-half years during the twenty-six years that the parties were married and living together.

At the time of the divorce action, both parties were in poor health. Dolores is disabled for social security purposes and probably will not be able to return to full-time employment. She receives about $310 per month in social security and disability insurance payments. David has had problems with colitis, ulcers and a bad back.

The trial court found that the parties had accumulated the following property:

1) The family farm, including 156 acres of land, the house and some outbuildings, which the trial court found was a gift to David from his parents and not the joint work product of the marriage.

2) Certain improvements to the land and buildings, which were the result of the mutual efforts of the parties.

3) Farm machinery, soybeans and miscellaneous household items worth approximately $52,900, all acquired through the mutual efforts of the parties.

4) Assets of just over $30,000, represented by David's checking and savings accounts and receivables, less outstanding checks and debts.

5) Assets of approximately $15,000, represented by Dolores' savings account, cash on hand and receivables.

The trial court allowed the parties to retain their own savings accounts and other liquid assets. With regard to the division of property, the trial court awarded Dolores $7,700, to be paid immediately, and $2,000 per year for twelve years, without interest. The trial court also awarded Dolores various personal property and alimony of $1,000 per year until her death or remarriage, with the payments to begin thirteen years hence. The trial court directed that the parties pay their own attorney fees and costs.

■ The trial court's finding that the family farm was a gift to David is not clearly erroneous. It was therefore within the trial court's discretion whether or not to consider the family farm as part of the property to be divided. *Buseman v. Buseman*, 299 N.W.2d 807 (S.D.1980); *Clement v. Clement*, 292 N.W.2d 799 (S.D.1980); *Andera v. Andera*, 277 N.W.2d 725 (S.D. 1979).

■ Dolores contends that the evidence does not support the following finding of the trial court:

That certain improvements were made to the homestead in the line of providing outbuildings and grain storage facilities, which were acquired by the mutual efforts of the parties, but that the value of these improvements is offset by the fact that [Dolores] obtained and completed a college education during the course of the marriage at the mutual expense of the parties.

Our function on appeal is to ascertain whether or not there is evidence from which the trial court could make such a finding of fact. *Estate of Podgursky*, 271 N.W.2d 52 (S.D.1978). We find no evidence to support the finding that Dolores obtained and completed a college education during the course of the marriage at the mutual expense of the parties. Indeed, David himself directs us to no evidence supporting this finding. Accordingly, we must reverse and remand for further proceedings to determine how these improvements to the homestead should be divided.

■ Dolores contends that the trial court erred in deferring the property division payments without requiring David to pay interest. The rules regarding interest on deferred property division payments were set forth in *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979), where we stated:

[I]f for the convenience of the husband he is permitted to make a property division by paying his wife her share of the marital property in cash in installments [,] . . . as a general rule any deferred payments

should bear interest at the going rate; otherwise, the wife is not actually receiving the property division to which the court has determined she is entitled.

There can be exceptions to this rule. A trial judge can properly set an interest rate on deferred payments at a rate lower than the going rate if the lower rate is an integral part of the overall plan for property division.

278 N.W.2d at 444.

■ The trial court awarded Dolores $7,700 immediately and $2,000 per year for the next twelve years, without interest. Although it appears that Dolores is receiving $31,700, when the time value of money is taken into consideration the present value of that amount is substantially less, depending on the discount rate that is applied. We are unable to determine from the findings of fact and conclusions of law whether or not the absence of interest on the deferred property division payments was an integral part of the overall plan for property division, given the length of time over which these payments are to be made and the present value of those payments. Therefore, we remand to the trial court for a determination whether Dolores should receive interest on the deferred property division payments.

■ Dolores contends that the trial court erred in not requiring David to pay her attorney fees and costs. An award of attorney fees and costs rests in the sound discretion of the trial court. *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979). We conclude that the trial court did not abuse its discretion in requiring the parties to pay their own attorney fees and costs.

We have reviewed Dolores' remaining contentions and find them to be without merit.

We affirm those portions of the judgment relating to alimony and attorney fees. The property division portion of the judgment is reversed, and the case remanded to the trial court for further proceedings consistent with this opinion.

DUNN, MORGAN and FOSHEIM, JJ., concur.

HENDERSON, J., concurs in part, dissents in part, and concurs specially in part.

HENDERSON, Justice (concurring in part; dissenting in part; concurring specially in part).

I find myself at variance with the conclusions reached in the majority opinion. I would not open the equity package judiciously created by the trial court and isolate two items for readjudication upon a theoretical reverse and remand.

In this case, the trial court made a studied effort to be fair to both parties by awarding each of them approximately fifty percent of the assets accumulated during a marriage of twenty-six years. Admitting that she has already received approximately fifty percent of the marital assets, appellant-wife is now attempting to chip away at the equity package. Her desire is obvious: she wants more than fifty percent. I note that the transcript reveals that she has arthritis and a chronic anxiety and depression syndrome. She is able, however, to go out dancing at night and into the early hours of the morn. Although her own doctor recommended that she secure part-time employment as a therapeutic measure, appellant-wife has steadfastly remained unemployed. During the marriage, the transcript bears out that she became interested in other men. When returning from school functions, the parties' children smelled liquor on her breath. One ponders upon these facts as one considers her supplications for equity. Her personal conduct bore directly upon her ability and willingness to financially contribute to the economic welfare of the family unit.

The trial judge either did or did not abuse his discretion. I maintain that he did not. I do not believe that we must isolate and gratify each equitable whim in a case. In the final analysis, we must determine if the trial judge acted in fairness, and with good, sound discretion. We must not thrust upon him the impossible or the impracticable; nor should we require from him a perfect

trial and judgment. The parties are entitled to a fair trial and judgment and the trial court in this case accomplished its legitimate purpose. The trial judge's decision meets our former enunciated standards of review. The trial court "is not bound by any mathematical formula but shall make such award from the material factors before [it] having due regard for equity and the circumstances of the parties." *Kressly v. Kressly*, 77 S.D. 143, 150, 87 N.W.2d 601, 605 (1958).

In examining the trial court's award of the assets herein, I am convinced that it considered these previously enunciated factors: (1) the duration of the marriage; (2) the value of the parties' property; (3) the ages of the parties; (4) the health of the parties; (5) their competency to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets. *Clement v. Clement*, 292 N.W.2d 799 (S.D.1980); *Lien v. Lien*, 278 N.W.2d 86 (S.D.1979). A trial court has broad discretion in making a division of property and in awarding alimony, and its discretion will not be set aside or modified unless it clearly appears that it abused its discretion or where assets have been completely overlooked by the trial court. *Lien v. Lien*, supra; *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979); and *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D.1978). This discretion, however, is a judicial discretion, not an uncontrolled one, and its exercise must have a sound and substantial basis in the evidence.

Appellee-husband is in poor health, a fact appellant-wife repeatedly admitted during the trial. He is restricted to making a modest living in a relatively small farming operation through the helpful efforts of a good son. Appellee-husband has no educational or occupational skills by which he can undertake an alternate mode of support. Appellant-wife, on the other hand, holds a bachelor's degree in elementary education

with fifteen hours credit towards her master's degree. She taught school for nine to ten years out of the twenty-six years that the parties lived together as husband and wife. The trial court carefully took this into consideration, along with the general attitude of appellant-wife towards the farm. During the course of the trial, appellant-wife contended that she made contributions to the family farm in the form of labor. Her own children refuted her testimony. The children testified that their mother was not at home enough to even regularly cook meals. Her twenty-three year old son testified that he could not remember his mother helping with the farm operations; this testimony was corroborated by appellant-wife's twenty-four year old married daughter. Appellant-wife's contention that she worked in the fields was also repudiated by the children. The parties' daughter testified that her mother had never taught her to cook and that it was her father who taught her to iron. Appellant-wife's testimony that she provided meaningful financial support for the family's needs was further denounced, under oath, by several members of the family.

The majority's decision to reverse stems not from an abuse of discretion by the trial court; rather, it is based upon this Court's holding that the trial court's finding was clearly erroneous as to appellant-wife's college education. Testimony reveals that the parties were married when appellant-wife was nineteen years of age. At nineteen, appellant-wife did not have a bachelor's degree in elementary education. There was testimony that, during the marriage, she attended the University of South Dakota to obtain further college credits towards her master's degree. Furthermore, appellant-wife maintained at trial that she had paid for her college education by borrowing on an insurance policy. Although the evidence indicates that she was teaching when married, it also indicates that she formalized her education during the marriage so that she could continue teaching.* Appellant

* In the post World War II era, many high school graduates were teaching high school in South Dakota on permits and certificates. This was before consolidation when one-room school houses were the rule rather than the exception

subsequently taught school for approximately nine to ten years. Thus, the trier of fact properly found that appellant-wife obtained and completed her college education during the course of, and not prior to, the marriage. We have expressed, however, that a trial court's findings will not be overturned unless they are clearly erroneous. SDCL 15–6–52(a); *Gassman v. Gassman*, 296 N.W.2d 518 (S.D.1980); *Cunningham v. Yankton Clinic, P. A.*, 202 N.W.2d 508 (S.D.1978). This leaves one conjectural premise to be answered, and that is whether appellant-wife's college education was obtained and completed "at the mutual expense of the parties."

The record is abundant with evidence from the children and the parties themselves that appellee-husband was the real provider in the family and that he furnished his family with a place to live (the ancestral farm) and put groceries on the table. Without the basic necessities of life, appellant-wife could not have attended college and obtained her degree. Appellant-wife testified that she used her earnings primarily for the purchase of household goods and furnishings. The trial court did in fact award her those items that she maintained she had purchased. As regards the balance of her funds, appellant-wife indicated by testimony that she would "possibly buy down at Yankton some groceries, it wasn't any large amount." The trial court, therefore, in its consideration of all of the equities, did not choose to isolate the improvements to the farm such as outbuildings and grain bins and award appellant-wife a specific amount thereon. Balancing the equities, the trial court believed that it was reasonable and fair to consider that appellant-wife had, indeed, obtained and completed a college education during the marriage. I conclude that such a finding was not clearly erroneous. Furthermore, this finding of fact obviously indicates that the equitable power of the trial judge was invoked therein because the term "offset" is inherent to the remedial powers of a trial judge sitting in equity. "The burden of establishing the incorrectness" of the findings is on appellant. *Hilde v. Flood*, 81 S.D. 25, 28, 130 N.W.2d 100, 101 (1964). Appellant-wife has not met that burden. The trial court's power of discretion in determining an "offset" was not invoked in such a fashion as to violate the past holdings of this Court.

I specially join in the majority's decision to remand. The remand can result in a specific finding that bolsters the trial court's holding that an integral part of the overall plan for property division encompasses that there be no interest on the yearly property payments. I would point out, however, that in *Lien v. Lien*, supra, this Court did not establish a requirement of a specific finding of fact or conclusion of law pertaining to an integral part of an overall plan for property division. In *Lien*, there was interest awarded. In this case, no interest was awarded. I am firmly convinced that it is within the discretion of the trial court not to award interest if its action is an integral part of an overall plan. Here, the trial court considered the testimony that appellee-husband was an ill man who was operating a small farm at a moderate income. It strikes me that the twelve years of payments on the property award, which were to be immediately followed on the thirteenth year by a $1,000 per year alimony award, strongly suggests that the trial court had an overall plan for the division of property, including all viable tax ramifications.

Lastly, a court is not a bank. It need not live by principal and interest nor by rules of banking. Its first and foremost purpose is to dispense justice. It may be logical that appellant-wife should receive interest. It might not, however, be reasonable to do so under the circumstances of this case. I deduce that the trial judge, as he exercised his discretion, did not believe that an award of interest would be reasonable under the

---

in rural communities. These permits and certificates were obtained by high school gradu-

ates on completion of a six-week summer school course.

facts of this case. Undoubtedly, the trial judge carefully considered the economic plight of both parties in his search for that elusive concept called equity.

I concur in the balance of the majority's opinion.