Mary SCHUMAKER, Plaintiff
and Appellee,

v.

David SCHUMAKER, Defendant
and Appellant.

No. 16061.

Supreme Court of South Dakota.

Considered on Briefs Oct. 14, 1988.

Decided April 26, 1989.

Thomas M. Tobin, Aberdeen, for plaintiff and appellee.

Joe L. Maynes, Aberdeen, for defendant and appellant.

SABERS, Justice.

David Schumaker appeals a division of marital property. We affirm.

## FACTS

David and Mary Schumaker were married in 1983. David and Mary lived together for three years prior to the marriage in an apartment furnished by Mary. During this time, Mary paid the rent and most of the household expenses from her earnings while David invested most of his earnings in his father's farming operation. At the time of the marriage, Mary was working full-time and David was farming full-time with his father and working part-time for UPS. Mary brought her automobile, various household items and $1,000 cash into the marriage. David contributed some livestock and various improvements he had made on a 40 acre tract of his father's land prior to the parties' purchase of the property and construction of a home thereon.

After construction of the parties' home, they moved to the 40 acre farm. David continued his part-time job as well as farming with his father. Mary also continued working full-time, did the house and yard work, cooked for David and sometimes a hired man and occasionally helped with the farm work. Mary's income was used for general household expenses. David made the mortgage payments and paid the taxes and electric bills. As will be more thoroughly discussed, David invested the balance of his income in his father's farming operation.

The parties separated in April 1986. No children were born during the marriage. Mary moved out of the home taking her vehicle, her personal effects, the household

goods she brought into the marriage and some furniture purchased during the marriage. David retained possession of the 40 acres of land, the home, the livestock and machinery and the remaining furniture.

Following the divorce trial, the trial court entered its findings of fact and conclusions of law incorporating by reference its memorandum opinion. The trial court placed valuations on the marital property and awarded Mary the value of 42% of the net assets as her equitable share. The trial court used 42% rather than 50% to adjust for the value of property Mary had already taken from the home. David was awarded the 40 acres of land, the home, the remaining furniture, and the livestock and machinery, subject to the liabilities thereon.

### 1. VALUATION OF, AND INCLUSION OF, CERTAIN ASSETS IN THE MARITAL PROPERTY.

All of David's issues concerning the property division rest upon the alleged error in valuing the marital property. David asserts that the trial court erred in its valuation by including in the marital assets $26,604.05 in property he brought into the marriage. David argues that since he accumulated these assets prior to the marriage they were not subject to the equitable property division and should have been deducted from the marital assets. We disagree.

■ On review of a property division, this court will not attempt to place valuations on the assets because that is a task for the trial court as the trier of fact. *Herrboldt v. Herrboldt*, 303 N.W.2d 571 (S.D.1981). The only time this court interferes with the valuations determined by the trial court is when it has made a clearly erroneous valuation finding. *Id.* In valuing marital property, a trial court may consider when and how the property was accumulated but it is not obligated to do so. *Buseman v. Buseman*, 299 N.W.2d 807 (S.D.1980). Thus, we hold that the trial court was not clearly erroneous by including the assets David accumulated prior to the marriage in the marital property.

■ David also argues that the trial court erred in its valuations because he was the only party who submitted evidence on the value of the assets and the trial court did not accept all of his figures. However, in valuing marital property, a trial court is not bound by the valuations set forth by the parties. *Herrboldt, supra.* The trial court need only set the values at a figure that lies within a reasonable range of figures, and it need not be an exact amount. *Id.* Here the trial court's valuations were all within a reasonable range of the figures David offered. Accordingly, we find no clear error based upon this argument.

### 2. DID THE TRIAL COURT ERR IN INCLUDING $30,000 IN THE MARITAL PROPERTY AS DAVID'S "HIDDEN EQUITY" IN HIS FATHER'S FARM CORPORATION?

■ David worked full time for a farm corporation owned by his father and mother. David's father was the president and major stockholder of the corporation but was disabled and had retired from an active management role in the farming operation. As a result, David was considered the foreman of the operation. In addition to his services as foreman, David invested significant personal finances in the corporation. Because of Mary's support, David was able to invest a large part of his own earnings in the operation. Despite David's contributions of labor and finances to the corporation, David and his father both testified that David held no office, stock or interest in the corporation. They contended that David had no assurance of obtaining an interest in the corporation at any time in the future although David stated that he hoped he would. Both David and his father denied that David was ever paid any wages by the corporation or that the corporation owed David any wages. David did acknowledge that he had a "loose" business arrangement with the corporation. However, David maintained that the only sort of compensation he ever received was an occasional "loan" or "gift" when he needed financial assistance.

During the trial Mary sought discovery of the farm corporation's financial records to ascertain the nature and extent of David's interest in the corporation. David resisted Mary's discovery request and discovery was ultimately denied. The financial records of the corporation proving unavailable, Mary's evidence of David's interest in the corporation was limited to her own testimony and to cross-examination of David and his father. Mary testified that at the beginning of the marriage she thought that David and his father were operating on a one-third and two-thirds basis respectively. Mary further testified that David told her during the last year of the marriage that he and his father were operating half and half.

It is clear that the trial court was troubled by the issue of David's interest in the corporation. Apparently based upon the value of David's services to the corporation during the marriage, the trial court ultimately included $30,000 in the marital assets as David's "hidden equity" in the corporation. David contends that this valuation was speculative and contingent and therefore clearly erroneous. Accordingly, David argues that it was error for the trial court to include this $30,000 in the marital assets.

This court's standard of review with regard to the valuation of marital property is whether the trial court divided the assets in an equitable manner. *Herrboldt, supra.* Again, the only time this court interferes with the valuations determined by the trial court is when the trial court has made a clearly erroneous valuation finding. *Id.* In this regard, this court accepts the evidence including any reasonable inferences which are favorable to the trial court's determination. *Id.* Further, this court will give due regard to the trial court's opportunity to judge the credibility of witnesses. *Hersrud v. Hersrud,* 346 N.W.2d 753 (S.D. 1984).

Here the trial court clearly discredited the testimony of David and his father concerning David's interest in the farm corporation. The trial court characterized their testimony as less than candid, evasive and vague. Having rejected the contention that David had no interest in the farm corporation, it became incumbent upon the trial court to place a value on David's corporate interest as a marital asset. *See Laird v. Laird,* 322 N.W.2d 254 (S.D.1982); *Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977) (in making a property division a trial court must place a value upon *all* property held by the parties). In making this valuation, the trial court was not obligated to arrive at an exact figure. *Hanks v. Hanks,* 296 N.W.2d 523 (S.D.1980). All that was required was that the trial court's valuation be within a reasonable range of the evidence before it. *Id; Moser v. Moser,* 422 N.W.2d 594 (S.D.1988).

Based upon our review of the record in this matter we are not convinced that the trial court's valuation of David's corporate interest was clearly erroneous. David's father, the president of the corporation, gave the testimony concerning the monthly value of David's services as a farm hand. Multiplying this figure by the number of months in the marriage in and of itself yields $24,000. Moreover, we observe that David was much more than a mere farm hand, having served as foreman of the farm operation. Clearly this would have increased the value of David's services to the corporation. Added to the value of these services would be the value of David's financial contributions to the corporation over the duration of the marriage.

With regard to the corporation, David's father testified that it operated an extensive farming operation consisting of some 850 acres of tillable land and anywhere from 200 to 400 acres of pasture and hay land. The corporation also owned the farm machinery and approximately 200 cows and calves. David's father testified that the livestock and machinery were all debt free. Despite references to the depressed farm economy, David's father testified that there were no sizeable debts against the corporation and that he wanted and expected the existing debts to be paid off by year's end.

Given the extensive and relatively debt free nature of the assets held by the corporation and considering the value of David's

services and financial contributions to the corporation during the marriage, we find that the trial court's valuation of David's corporate interest at $30,000 was within a reasonable range of the evidence. Although such a valuation is to be based upon "hard evidence" (*Hanks, supra*) the trial court based its valuation on the only evidence it had before it and we decline to state that such valuation was clearly erroneous.

In considering the appropriate factors (*Senger v. Senger*, 308 N.W.2d 395 (S.D. 1981)), we approve Mary's petition for attorney's fees in the amount of $1,240.

Affirmed.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Under all of the circumstances of this case, it appears that the award of $20,-613.60 unto Mary Schumaker is equitable. We must be truly cognizant of SDCL 25-4-44 which vests a broad discretion in the trial court in the division of property. We have said so as recently as *Moser v. Moser*, 422 N.W.2d 594 (S.D.1988), and *Storm v. Storm*, 400 N.W.2d 457 (S.D.1987). There must be a clear abuse of discretion for us to overturn these divisions of property under that broad statute. Having said that, which is not novel and is strictly old hat in this Court, I pass to a deeper consideration.

It is obvious that SDCL 25-4-44 requires a consideration of equity and circumstances of the parties. This is a general, vague statement and must be probed by the trial court, which should search deeply into equitable circumstances, when a decision is made. Precisely, this Court has accommodated such a probing in depth by setting up criteria for the trial courts to consider. Those criteria are: Duration of the marriage; value of the property; ages of the parties; their health and competency to earn a living; *the individual contributions of the parties to the accumulation of the property;* and the income-producing capacity of the parties' individual assets. We have expressed that fault should not be considered. See very recent case of *Baltzer v. Baltzer*, 422 N.W.2d 584, 587 (S.D. 1988), for a reannouncement of this criterion. It is because of one of these factors, the "individual contributions of the parties to the accumulation of the property," that I write specially because I believe that there is a disparity of thought and practical application on the trial bench to that criteria. Should the property, to be divided, be limited to that property which has been accumulated through the *joint efforts of the respective spouses?*

Apparently, *Balvin v. Balvin*, 301 N.W. 2d 678 (S.D.1981), instructs us that it is within the discretion of the trial court to include or not include property which was either inherited or brought into the marriage by one of the parties. In *Buseman v. Buseman*, 299 N.W.2d 807, 809–10 (S.D. 1980), this Court quoted a 1970 decision of ours, *Swenson v. Swenson*, 85 S.D. 320, 324, 181 N.W.2d 864, 866 (1970); therein, we stated: "We must follow the rule that '[w]hile the [trial] court may consider when and how the property was accumulated, *it is not obligated to do so.*'" (Brackets in original; emphasis supplied.) Therefore, it appears that a trial judge, after due reflection of *when and how* property was accumulated, may say to one of the litigants: "Your inherited property shall be set aside to you—or—the property you brought into the marriage shall be set aside unto you."

My mind tells me that, perhaps, our *Swenson, Buseman,* and *Balvin* rule is too broad and comprehensive. It might well be fostering litigation that ordinarily would not result in our state, if this Court were more definitive. Perhaps the rule, if rule it is, should be changed on the specific criteria which I now address. Twice I have expressed my dissatisfaction with this broad-based criteria, for it creates an opportunity for an eager litigant to seize an inheritance of the other litigant which was probated through the latter litigant's deceased parents. I muse: Why should a new wife, and in this case, a wife of three and one-half years, be able, theoretically, to

share in either an inheritance of her new-won husband or her new-won husband's efforts, which begot property for him, before he married her? Likewise, the rule applies in the other direction. Women who have inherited sizeable estates or have developed assets through their efforts prior to their divorce action at issue, should not fall prey to some man who eyes her property. Considering that women today occupy a far greater role in society, and do accrete more wealth than their counterparts of yesteryear, should not women be protected from having their inherited estates or their earned property taken from them in a divorce case? In *Buseman*, 299 N.W.2d at 810 (Henderson, J., concurring in part and dissenting in part), and in *Laird v. Laird*, 322 N.W.2d 254, 257 (S.D.1982) (Henderson, J., concurring specially), I expressed a general dissatisfaction with an approach of a rule which is so broad, that great inequity can befall either husband or wife. Where we have a very short marriage, should assets brought in by either spouse be engulfed in the overall valuation of the marital property? I think not. Fortunes should not be won at the altar followed by quick divorce.

We recently held in *Henrichs v. Henrichs*, 426 N.W.2d 569 (S.D.1988) (Henderson, J., concurring in part and dissenting in part), that a personal injury award could properly be considered as a marital asset, to be divided as marital property, though same was accreted but four years before the divorce action. Here, the parties were married on January 8, 1983, and separated in April 1986, or marriage cohabitation of three years and three months. Husband apparently brought approximately $26,000 to $27,000 in assets into this marriage. This writer appreciates that no rigid formula must be followed in the division of property. *Bolenbaugh v. Bolenbaugh*, 89 S.D. 639, 237 N.W.2d 12 (1975). In this case, the trial court received the husband's Exhibit No. 1 as to valuations; the trial court relied very heavily in accepting this evidence. Here, the wife proffered very little, if any, evidence on valuations. One exception was a stipulation that the real estate consisting of the house, barn, and 40 acres of land was valued at $66,000.

There is no doubt that the husband was deeply involved in the family farm corporation, and his testimony that he really had no interest therein rings hollow. He obviously had an interest in the family farm corporation, though he held no stock therein. It is noted, by this writer, that the husband worked full time on this farm, with his father, and part time for UPS, while the wife continued working full time for Control Data. I note, in the record, that she often cooked for not only her husband but a hired man and occasionally did farm labor herself. Her wages were poured into general household expenses. Cash flow on a farm is usually very poor. It seems that money that husband did receive, he would pour back into the farming operation. She earned approximately $15,000 a year at Control Data. She brought an automobile, household goods and effects, and $1,000 cash into the marriage. For her to now receive a cash award of $20,613.60 to be paid by husband for her share of an award of marital property, cannot be said to be a clear abuse of discretion. Thus, I can concur in the result.

However, language in this opinion is not in keeping with my past special concurrences; I am concerned with the theoretical concept that there should be an equitable division of property which has *not* been accumulated through the joint efforts of the respective spouses. The rule, developed by this Court through precedent, can lead to disastrous and disparate awards. Rather, I prefer that the rule be tilted towards a division of property which has been accumulated through the joint efforts of the respective spouses. Indeed, I agree that the "individual contributions of the parties to the accumulation of the property" should be considered, as we have said as recently in *Baltzer, supra*, but that is the beginning, not the end, of an equitable dilemma. The question is: *How* should these individual contributions of the parties to the accumulation of the property be considered? Should literally "everything" be thrown into the pot for a division? In my

**820**

opinion, the trial courts must consider when and how the property was accumulated, and if it is obvious that one of the parties of the marriage would be unjustly enriched or has historically been uninvolved in the accumulation of a certain asset, before marriage, that asset should not go into the marital pot. This belief is founded upon a conviction that a man or woman may bestow his worldly wealth on his child without fear of a marriage court placing it in the hands of a stranger; likewise, it is founded upon a belief that the earnings and property derived from honest toil should remain the property of that person who begot it.