Clifford WEBER, Plaintiff
and Appellant,

v.

Judy Ell WEBER, Defendant
and Appellee.

Nos. 18744, 18755.

Supreme Court of South Dakota.

Argued Jan. 9, 1995.
Decided March 22, 1995.

ROBERT C. RITER, Jr. of Riter, Mayer, Hofer, Wattier & Brown, Pierre, for plaintiff and appellant.

Donna L. Bucher of Tinan, Smith & Bucher, Mitchell, for defendant and appellee.

JOHNS, Circuit Judge.

Clifford Weber (Clifford), appeals from an order restricting his visitation rights to his son. Judy Weber (Judy), has filed a notice of review of the same order finding her in contempt for a willful and contumacious refusal to comply with an earlier visitation order. We reverse and remand, in part, and affirm, in part.

FACTS

Clifford and Judy were divorced on December 1, 1989. Judy was awarded legal and physical custody of their son, J.W., and Clifford received reasonable and liberal visitation. After the divorce, the parties had conflicts over Clifford's visitation rights. They returned to court and an order was entered on November 16, 1992, further defining Clifford's rights of visitation.

In February of 1992, Clifford married Patti. Patti has a son (step-brother) from a prior marriage. The boy lives with his father, but his father and Patti maintain a liberal visitation schedule.

J.W. is now ten-years-old and is small for his age. His step-brother is now fourteen-years-old and is also small for his age due to a pituitary gland disorder. The two boys developed a relationship when they visited Clifford and Patti's home.

Sometime during the spring of 1993, J.W. told Judy that step-brother had touched him in his private parts.. Apparently this was the only incident of sexual contact between the two and occurred sometime in the fall of 1992.

After receiving the report Judy had J.W. visit with Diane Cogley, a licensed private social worker. Ms. Cogley and J.W. talked about the sexual contact. Ms. Cogley recommended that J.W. not visit Clifford's home at any time that step-brother was present. At trial, however, Ms. Cogley testified that she did not believe that it was necessary to continue the separate visitations indefinitely. Rather, she believed that contact between the boys would be appropriate as long as it was supervised.

J.W. also visited with Ms. Margaret Pier, a licensed mental health counsellor, who indicated that separate visits were not necessary if the issue was properly dealt with. The Department of Social Services became involved when Ms. Roseanne Stratton, a child protection social worker, interviewed step-brother and reviewed Ms. Pier's report. Ms. Stratton's only recommendation was that the boys be separated at night.

Following the hearing, the trial court entered findings of fact and conclusions of law and an order which provided that: 1) for an indefinite period of time, no visitation between J.W. and Clifford would occur at any time that step-brother was visiting Clifford's home; 2) for an indefinite period of time, Clifford would permit no contact between the boys; and 3) Judy was in contempt of court for her willful refusal to comply with the November 16, 1992 visitation order.

## ANALYSIS

### I.

Clifford contends that the trial court abused its discretion in ordering a total ban, for an indefinite period of time, on any con-

tact between the step-brothers while J.W. is in his custody. We agree that the restrictions on Clifford's visitation rights are not reasonable in either scope or duration and reverse the trial court on this issue and remand for further disposition.

■ Trial courts have broad discretion when considering matters of child custody and visitation. *Chicoine v. Chicoine*, 479 N.W.2d 891, 893 (S.D.1992). Accordingly, "the trial court's decision can only be reversed upon a clear showing of an abuse of discretion." *Id.* (citations omitted). "However, the trial court's exercise of discretion is not uncontrolled and must have a sound and substantial basis in the testimony." *Williams v. Williams*, 425 N.W.2d 390, 393 (S.D.1988); *Kester v. Kester*, 257 N.W.2d 731 (S.D.1977).

■ The primary focus is the best interests of the children. *Chicoine*, 479 N.W.2d at 893; SDCL 25-4-45.

The trial court must determine from all the facts and circumstances what is in the best interests of the child "relative to the child's temporal, mental and moral welfare." In most circumstances, "it will be in the best interests of children that they receive the love, affection, training, and companionship of their noncustodial parent." This is not true, however, "where the evidence establishes that exercise of visitation will be harmful to the welfare of the children; in this event, the right of the noncustodial parent to visit with his children can be limited, or, under extreme circumstances, prohibited altogether."

*Id.* (citations omitted).

■ Having reviewed the trial court's findings of fact and the evidence presented, we are left with a firm conviction that the trial court did abuse its discretion when it entered a total ban on any contact between the boys while J.W. is in the custody of his father. In other words, we are of the opinion that the limitations placed on Clifford's visitation rights are unreasonably restrictive.

In its findings of fact, the trial court found that sexual contact between the two boys had occurred and that such contact was harmful,

to one degree or another, to J.W. The trial court also found that the boys had not established a long-term relationship; that they are "merely" step-siblings; and that neither of the boys resided "in the Clifford Weber home on a full-time basis although each spends time in the Clifford Weber home when they are exercising visitation with their non-custodial parent." Finally, the evidence disclosed that during a family wedding in the summer of 1993, step-brother may have encouraged a group of children to pull down J.W.'s pants.

These findings of fact and the pants pulling incident are the only facts upon which one can conclude that future contact between the boys would be harmful to J.W.'s temporal, mental, and/or moral welfare. They do not, however, justify the measures ordered by the trial court in light of the other findings and other uncontested facts in this case.

It was undisputed that while sexual touching between pre-puberty boys is unacceptable, it is not necessarily abnormal. Furthermore, neither Judy nor any of the expert witnesses proposed a total ban on visitation during those times that step-brother may be present at Clifford's home or in his company. Instead, their proposals ranged from separate bedrooms to supervised contact between the boys. Finally, in its findings of fact, the trial court found that "both boys have discussed the incident with adults, understand [its] inappropriate nature and have confirmed that recognition with adults." The court found that "[J.W.] indicated to Margaret Pier that he likes [step-brother] to visit at his father's home on the same weekends he is there as they enjoy one another's company." And the court found that "[J.W.] indicated to

Margaret Pier that they had touched one another and that it had been a mutual action, but that nothing further had occurred." Although this Court certainly empathizes with the trial court's obvious frustration with the parties in this case, the order of the trial court went beyond both the evidence and the requests of the parties and was, therefore, an abuse of discretion. We accordingly reverse and remand with instructions that the trial court consider what reasonable restrictions should be imposed, if any.[1]

II.

In her notice of review, Judy contends that the trial court's findings of fact do not sufficiently support its conclusion of law that she is in contempt for willful and contumacious interference with Clifford's visitation rights. We disagree and, accordingly, we affirm the trial court.

To support her contention Judy cites *Talbert v. Talbert*, 290 N.W.2d 862, 864 (S.D. 1980), where we held that "[w]ithout a thorough recitation of facts that support a finding of contempt and without a finding that the four elements of contempt are present, a conclusion that contempt of court has occurred is improper." The elements of contempt are (1) existence of an order, (2) knowledge of that order, (3) ability to comply with the order, and (4) a willful or contumacious disobedience of the order. *Talbert, supra*, at 864 (citing *Hanisch v. Hanisch*, 273 N.W.2d 188 (S.D.1979)).

We have reviewed the November 16, 1992, order which established a very specific visitation schedule for Clifford. In addition, we have reviewed the findings[2] of the trial

---

1. Our holding is limited to the facts of this case. By our decision we are not recognizing any right of step-children to visit one another.

2. The relevant findings are as follows:

I.

That Judgment and Decree of Divorce were entered in the above-entitled matter of December 1, 1989 and the ORDER AMENDING AND DEFINING VISITATION RIGHTS was entered on the 16th day of November, 1992. That both the Plaintiff Clifford Weber and Defendant Judy Ell Weber were aware of the terms and conditions set out in the ORDER AMENDING AND DEFINING VISITATION RIGHTS.

II.

That the Defendant Judy Ell Weber has the ability to comply with the ORDER AMENDING AND DEFINING VISITATION RIGHTS, that her refusal to comply with said Order was willful and contumacious.

X.

That despite knowledge of the Court Order, on more than once [sic] occasion the Defendant, Judy Weber, interfered with Clifford Weber's efforts to exercise his visitation rights. On other occasions when Clifford Weber would come to pick up [J.W.] for the exercise of his visitation rights, Judy Weber would initiate arguments between the parties in front of the

court and find that they sufficiently set forth facts establishing each of the four elements of contempt. Therefore, we affirm the trial court's conclusion that, as a matter of law, Judy was in contempt for the manner in which she interfered with Clifford's visitation rights.

MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

JOHNS, Circuit Judge, for WUEST, Retired Justice, who was a member of the Court at the time this action was submitted and who had disqualified himself from participating therein.

child and was generally not cooperative with the exercise of his visitation, although the Plaintiff attempted to modify his visitation rights so as to more fully comply with [J.W.'s] schedule.