#26576-aff in pt, rev in pt & rem-GAS

**2013 S.D. 98**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

NICOLE LYNN PIEPER,                    Plaintiff and Appellant,

    v.

TODD CARL PIEPER,                      Defendant and Appellee.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA C. RIEPEL
Judge

* * * *


MICHELE A. MUNSON of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota          Attorneys for plaintiff
                                   and appellant.


STEVEN G. HAUGAARD
Sioux Falls, South Dakota          Attorney for defendant
                                   and appellee.

* * * *

ARGUED OCTOBER 2, 2013

OPINION FILED **12/24/13**

SEVERSON, Justice

[¶1.]        Todd Pieper (Todd) and Nicole Pieper (Nicole) have two children, B.P. and T.P.  Nicole alleges that Todd sexually abused B.P., which Todd denies.  They divorced in February 2011.  The Second Circuit Court gave Nicole sole physical custody of the two children and granted Todd supervised visitation.  Nicole appeals the divorce decree, asserting that: (1) the circuit court abused its discretion by granting Todd visitation under an erroneous legal conclusion and applying an incorrect burden of proof; (2) the circuit court abused its discretion when evaluating conflicting testimony from experts; (3) the circuit court abused its discretion by delegating its duty to determine the best interests of the child to a social worker; and (4) the circuit court erroneously valued Nicole's retirement.  Because the circuit court erroneously concluded that it could not prohibit visitation and applied the incorrect burden of proof to the allegations of sexual abuse, we reverse the circuit court's visitation order and remand for a determination of whether visitation with Todd is in the children's best interests.  We affirm the circuit court's valuation of Nicole's retirement.

## Background

[¶2.]        Todd and Nicole married on May 23, 1998.  They had two children during their marriage—a daughter (B.P.) on October 23, 2004, and a son (T.P.) on May 6, 2008.  Nicole alleges that B.P., starting in July 2008 without provocation or questioning, began indicating that Todd was sexually abusing her.  B.P. allegedly made statements about Todd performing sexual actions.

[¶3.] Later that month, Nicole alleges she witnessed events that led her to believe B.P.'s statements. While Todd, Nicole, and B.P. were sleeping in the same bed, Nicole alleges that Todd pushed B.P.'s head to his pelvic area. Nicole apparently confronted Todd. Todd denied any inappropriate touching. Nonetheless, Nicole contacted the police and the Department of Social Services (DSS). DSS told Nicole to take B.P. to Child's Voice.

[¶4.] At Child's Voice, a physical examination by Dr. Nancy Free revealed that B.P. had labial adhesions. Dr. Free testified that labial adhesions in young girls are caused by a lack of estrogen, which is normal in pre-pubertal females, as well as caused by irritation, whether it is hygiene or trauma. Ultimately, Dr. Free could not determine whether B.P. was sexually abused.

[¶5.] Nicole alleges that on November 30, 2008, she again witnessed Todd sexually abusing B.P. Nicole claims she saw Todd kneeling in front of B.P. inserting his fingers in B.P.'s vagina. Nicole immediately took B.P. to the police station and reported the event to the police. Detectives interviewed Nicole and B.P. Detective Jennifer Van Roekel used anatomically correct dolls during B.P.'s interview. B.P. physically and verbally demonstrated that Todd had digitally penetrated her vagina and anus, she had performed oral sex on Todd, and Todd's mouth had touched her vagina. B.P. again was referred to Child's Voice. There, B.P. alleged to Dr. Free that sexual contact occurred with Todd. Further, Dr. Free noted reddening of B.P.'s labia. However, Dr. Free could not confirm whether B.P. had been sexually abused. Dr. Free recommended that B.P. receive counseling and

referred B.P. to Michele VanDenHul. VanDenHul began counseling B.P. in February 2009.

[¶6.] Subsequently, the Minnehaha County Sheriff's Department arrested Todd. A grand jury indicted Todd on December 11, 2008, for first degree rape. Shortly thereafter, Nicole initiated divorce proceedings and obtained a protection order against Todd. At a criminal trial on November 18, 2009, a jury acquitted Todd. The civil case proceeded, assigned to Judge Riepel, Second Judicial Circuit.

[¶7.] Following his acquittal, Todd requested visitation with B.P. and T.P. by a motion for visitation heard on February 19, 2010. The circuit court ordered supervised visitation with T.P. only. One month later after hearing testimony, the circuit court revised visitation. A year later in February 2011, through several proceedings, the circuit court addressed the divorce issues. On February 11, 2011, the circuit court granted Nicole and Todd a divorce on the grounds of irreconcilable differences. On February 25, 2011, the circuit court concluded, among other things, that Todd was entitled to half of Nicole's pension account valued on the date of their divorce at $31,576.84. Also, the circuit court continued the protection order against Todd but expressed an interest in reunification between Todd and the children.

[¶8.] At a hearing on May 23, 2011, the circuit court expressed its concern with completely denying Todd visitation, stating: "I am driven by our state Supreme Court that says I am prohibited from denying visitation for eternity; and that the bottom line is for reunification at some point." To assist with a reunification plan, the circuit court elicited the help of Dr. Thomas Price. Dr. Price recommended a gradual exposure between Todd and B.P. with further counseling for B.P. Michele

VanDenHul, who had been counseling B.P. for approximately two years at this point, disagreed with a reunification plan. VanDenHul felt that no visitation should occur until B.P. was emotionally ready.

[¶9.] The circuit court disagreed with VanDenHul. The circuit court found that VanDenHul's counseling did not move B.P. any closer to dealing with B.P.'s feelings regarding the alleged sexual abuse. Moreover, the circuit court found that VanDenHul seemed to accept Nicole's version of the facts and did not investigate the possibility that the abuse did not occur. In VanDenHul's place, Sarah Alexander began counseling the children. VanDenHul and Larry Dancler, a family therapist, criticized Alexander's approach.

[¶10.] After Alexander issued her recommendations to the circuit court, Todd moved for primary physical custody. Due to scheduling rotations, the matter was heard on August 14, 2012, by Judge Tiede, who later denied the motion but dismissed the protection order. Prior to Judge Tiede's decision, Judge Riepel issued the divorce decree awarding sole physical custody of the children to Nicole and ordered supervised visitation between Todd and the children.[1] Along with the

---

1. The divorce decree allowed for visitation as follows:

> c. Visitation with T.P. shall begin at this time with visitation to take place at the Family Visitation Center, or other supervised setting as determined by Sarah Alexander, and that said visitation shall begin on a weekly basis and continue until visitation is modified at the direction of Sarah Alexander and confirmed by the Court;
>
> d. Visitation with B.P. shall begin at such time and such place as is determined by Sarah Alexander. Said visitation shall be in a supervised setting until such time as is determined by Sarah Alexander and confirmed by the Court.

divorce decree, Judge Riepel issued a memorandum decision, findings of fact, and conclusions of law, all of which provide the basis for this appeal. Most notably, the circuit court wrote that it could not "enter a total ban on any contact between a child and the biological parent" and that it could not "find by clear and convincing evidence that the alleged sexual abuse occurred[.]" Presently, the divorce decree controls the visitation between Todd and the children. Nicole appeals the divorce decree.

## Standard of Review

[¶11.] "The trial court has broad discretion in awarding custody of minor children and likewise visitation rights; therefore, the trial court's decision can only be reversed upon a clear showing of an abuse of that discretion." *Chicoine v. Chicoine*, 479 N.W.2d 891, 893 (S.D. 1992) (citations omitted). "An abuse of discretion is 'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *Schieffer v. Schieffer*, 2013 S.D. 11, ¶ 14, 826 N.W.2d 627, 633 (quoting *Hill v. Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d 818, 822). "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2048, 135 L. Ed. 2d 392 (1996). *See Knodel v. Kassel Twp.*, 581 N.W.2d 504, 506 (S.D. 1998) ("An abuse of discretion can simply be an error of law or it might denote a discretion exercised to an unjustified purpose, against reason and evidence.")

[¶12.] We review findings of fact "under the clearly erroneous standard of review." *Schieffer*, 2013 S.D. 11, ¶ 15, 826 N.W.2d at 633 (citation omitted). We

will not overturn the trial court's findings of fact unless a "complete review of the evidence leaves this Court with a definite and firm conviction that a mistake has been made." *Id.* (citation omitted). Conclusions of law are reviewed de novo. *Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d at 822 (citation omitted).

## Analysis

[¶13.] ***Prohibiting Visitation***

[¶14.] First, Nicole argues that the circuit court abused its discretion by granting Todd visitation based on an erroneous legal conclusion. Nicole maintains that the circuit court erroneously concluded that it could not completely deny Todd visitation even if denying Todd visitation was in the children's best interest.

[¶15.] "[O]ur brightest beacon remains the best interests of the child." *Zepeda v. Zepeda*, 2001 S.D. 101, ¶ 13, 632 N.W.2d 48, 53 (citation omitted). And when balancing interests, "[t]he best interests of the child[ ] must always prevail." *In re W.G.*, 1999 S.D. 85, ¶ 22, 597 N.W.2d 430, 434 (citation omitted); *see Jasper v. Jasper*, 351 N.W.2d 114, 117 (S.D. 1984) (stating "the welfare and best interests of the children are paramount to all other considerations"). "The best interests of the child [even] prevail over the noncustodial parent's privilege of visitation." *Lindley v. Lindley*, 401 N.W.2d 732, 736 (S.D. 1987) (citation omitted). In most instances, "it will be in the best interests of children that they receive the love, affection, training, and companionship of their noncustodial parent." *Chicoine*, 479 N.W.2d at 893 (quoting *Roberts v. Roberts*, 489 N.E.2d 1067, 1069 (Ohio 1985)). But this is not true, "where the evidence establishes that exercise of visitation will be harmful to the welfare of the children; in this event, the right of the noncustodial parent to

visit with his children can be limited, or, *under extreme circumstances, prohibited altogether." Id.* (emphasis added) (quoting *Roberts*, 489 N.E.2d at 1069); *see In re Termination of Parental Rights of P.A.M.*, 505 N.W.2d 395, 398 (S.D. 1993) ("The court which granted the divorce and determined custody . . . may deny Father any visitation rights."). *See also Wolt v. Wolt*, 778 N.W.2d 786, 799 (N.D. 2010) ("A non-custodial parent's visitation may be 'curtailed or eliminated entirely if it is likely to endanger the child's physical or emotional health.'" (quoting *Marquette v. Marquette*, 719 N.W.2d 321, 324 (N.D. 2006))).

[¶16.]        The bottom line is not reunification if reunification is not in the best interests of the child. The bottom line, as it has always been, is the best interests of the child. Here, the circuit court concluded that it could not issue an order prohibiting visitation because that would have been, in essence, terminating parental rights. Prohibiting visitation and terminating parental rights, however, are distinct legal theories with different applications and different effects. When visitation is prohibited, the noncustodial parent is still the legal parent. If conditions improve, the prohibition may be lifted. But when parental rights are terminated, the effect is a complete legal severance of the parent-child relationship.

[¶17.]        The circuit court's formal written findings reflect its blurring of those distinct legal theories. In its memorandum decision, which was incorporated into its findings and conclusions, the circuit court wrote: "The South Dakota Supreme Court has held that absent abuse and neglect proceedings, it is an abuse of discretion for the trial court to enter a total ban on any contact between a child and the biological parent." For its proposition, the circuit court cited *Weber v. Weber*,

529 N.W.2d 190, 191 (S.D. 1995). The circuit court continued: "In light of this holding, the Court did not find clear and convincing evidence that it was in the children's best interests to deny contact with Defendant." The circuit court misinterprets *Weber*.

[¶18.]    In *Weber*, a step-brother had inappropriate contact with the noncustodial parent's son while the son was visiting the noncustodial parent and step-brother. The incident allegedly was isolated and therapists recommended general supervision of the boys when they were together. The trial court, however, ordered an indefinite period of no visitation between the son and noncustodial father when the step-brother was at the noncustodial father's home. Further, the trial court prevented contact between the boys for an indefinite period of time. We reversed, holding that the restrictions on the noncustodial father's visitation rights were unreasonably restrictive. *Weber*, 529 N.W.2d at 191. We did not hold, as the circuit court suggested, that a total ban on visitation between the noncustodial parent and child was not allowed. To the contrary, we cited *Chicoine* and explicitly stated, "the right of the noncustodial parent to visit with his children can be limited, or, under extreme circumstances, prohibited altogether." *Id.* (quoting *Chicoine*, 479 N.W.2d at 893). Critically, we explicitly limited the holding of *Weber* to the facts of that case. *Id.* at 192 n.1.

[¶19.]    The circuit court may limit visitation if it is in the best interests of the child. That limitation may be to prohibit visitation altogether. But here, the circuit court appears to have erroneously concluded that it was unable to prohibit

visitation. That is an erroneous legal conclusion that guided the circuit court's discretion; therefore, the circuit court abused its discretion.

[¶20.] ***Burden of Proof***

[¶21.] Next, Nicole argues that the circuit court abused its discretion by applying an incorrect burden of proof to the allegations of sexual abuse. Nicole maintains that the circuit court incorrectly applied the clear and convincing evidence burden of proof to the allegations of sexual abuse when it should have applied the preponderance of the evidence burden of proof.

[¶22.] "Generally proof in a civil case need only be by a preponderance of the evidence." *Stavig v. Stavig*, 2009 S.D. 89, ¶ 15 n.1, 774 N.W.2d 454, 459 n.1 (citing *In re Estate of Gibbs*, 490 N.W.2d 504, 508 (S.D. 1992)). "'Preponderance of the evidence' is defined as 'the greater weight of evidence.'" *L.S. v. C.T.*, 2009 S.D. 2, ¶ 23, 760 N.W.2d 145, 151 (citation omitted). Under our domestic abuse laws, one seeking relief "must prove abuse by a preponderance of the evidence." *Beermann v. Beermann*, 1997 S.D. 11, ¶ 17, 559 N.W.2d 868, 872; SDCL 25-10-5. Likewise, allegations of misconduct warranting a restriction or prohibition on visitation must be proven by a preponderance of the evidence. *See L.S.*, 2009 S.D. 2, ¶¶ 21-22, 33, 760 N.W.2d at 150-51, 155; *see also Wolt*, 778 N.W.2d at 799 (stating that in North Dakota a restriction on visitation must be based on a preponderance of the evidence). Absent statutory guidance otherwise, if the trial court believes it is more likely than not that a child is being sexually abused, such belief is determinative of that fact when considering the child's best interests.

[¶23.] As stated earlier, prohibiting visitation of a noncustodial parent is distinct from terminating parental rights. The South Dakota Legislature set forth a higher burden of proof when terminating parental rights. There, a circuit court may terminate parental rights when it determines by clear and convincing evidence that an individual has subjected a child to sexual abuse. SDCL 26-8A-26.1. The heightened burden of proof during termination proceedings reflects the severity of that action. But limiting or prohibiting visitation does not require clear and convincing evidence of misconduct; instead, it requires a preponderance of the evidence. As shown in *L.S. v. C.T.*, we affirmed the trial court that found the mother, who sought to modify or vacate the father's visitation rights, failed to prove her allegations of child abuse by a preponderance of the evidence. *L.S.*, 2009 S.D. 2, ¶¶ 21-22, 28-33, 760 N.W.2d at 151-55.

[¶24.] The circuit court's formal written findings indicate that it applied the clear and convincing evidence burden of proof to the allegations of sexual abuse. The circuit court stated in its memorandum decision: "Based on the Court's inability to find by clear and convincing evidence that the alleged sexual abuse occurred, the Court wanted an expert to assist in seeing how best to work out a plan that would effectively start building some type of relationship between the children and Defendant." In its findings of fact, the circuit court stated: "The Court is not clearly convinced the abuse occurred." And in its conclusions of law, the circuit court stated: "Plaintiff has not shown by sufficient evidence that the Defendant is a danger to his children."

[¶25.] The circuit court should have applied a preponderance of the evidence burden of proof to the allegations of sexual abuse when determining whether visitation with Todd is in the children's best interest. But here, the circuit court incorrectly applied a clear and convincing evidence burden of proof. That is an erroneous legal conclusion that guided the circuit court's discretion; therefore, the circuit court abused its discretion.

[¶26.] ***Hearsay Evidence and Other Evidence***

[¶27.] Next, Nicole argues that the circuit court abused its discretion by relying on clearly erroneous facts and hearsay evidence, and by disregarding a preponderance of evidence that Todd sexually abused B.P., that visitation will harm the children, and that Nicole did not influence B.P.'s statements.

[¶28.] As to hearsay evidence, Nicole maintains that the circuit court and Dr. Price inappropriately relied on a report by Dr. Phillip Esplin, whom Todd hired during his criminal trial. Experts, however, are allowed to rely on facts or data not admissible in evidence. SDCL 19-15-3 (Rule 703). *See State v. Gallegos*, 316 N.W.2d 634, 636-37 (S.D. 1982); *State v. Best*, 232 N.W.2d 447, 455 (S.D. 1975) ("Practical necessity also demands that the physician rely on reports and tests made by others."). Also, a review of the record indicates that Nicole made no objection to Dr. Price's testimony in regard to Dr. Esplin's report. "We will not review a matter on appeal unless proper objection was made before the trial court. Objections must be made to the trial court to allow it to correct its mistakes." *Rogen v. Monson*, 2000 S.D. 51, ¶ 15 n.2, 609 N.W.2d 456, 460 n.2 (quoting *Husky Spray Serv., Inc. v. Patzer*, 471 N.W.2d 146, 153-54 (S.D. 1991)).

[¶29.]     As to other evidence, Nicole maintains that the circuit court abused its discretion by relying on clearly erroneous facts and disregarding a preponderance of evidence that Todd sexually abused B.P., that visitation will harm the children, and that Nicole did not influence B.P.'s statements.  Circuit courts "have broad discretion when considering matters of child custody and visitation."  *Weber*, 529 N.W.2d at 191 (citing *Chicoine*, 479 N.W.2d at 893).  That broad discretion includes discretion as to what evidence the trier of fact will rely on.  The circuit court did not abuse its discretion by weighing and relying on the evidence presented to it.  But as previously stated, the circuit court abused its discretion because it applied the incorrect burden of proof to the allegations of sexual abuse and erroneously concluded that it could not prohibit visitation.

[¶30.]     ***Counselors' Expert Testimony***

[¶31.]     Next, Nicole argues that the circuit court abused its discretion by disregarding B.P.'s treating counselor's opinion that visitation was not in the best interest of the children and instead relying on an expert to prepare a forced reunification plan rather than consider the best interests of the children.

[¶32.]     "As with all witnesses, it falls on the trier of fact to decide whether to believe all, part, or none of an expert's testimony."  *Schieffer*, 2013 S.D. 11, ¶ 24, 826 N.W.2d at 636 (quoting *Great W. Bank v. H & E Enters., LLP*, 2007 S.D. 38, ¶ 10, 731 N.W.2d 207, 209).  "As a result, 'it is within the trial court's discretion to choose between conflicting experts.'"  *Id.* (quoting *Simunek v. Auwerter*, 2011 S.D. 56, ¶ 16, 803 N.W.2d 835, 838).

[¶33.] The circuit court found that B.P.'s treating counselor—VanDenHul—lacked the experience and advanced training to deal not only with B.P. but with Nicole. The circuit court found that VanDenHul was not helping B.P. progress. Also, the circuit court found that VanDenHul's notes did not reflect that she conducted a formal diagnostic assessment, had undertaken any type of formal psychological assessment, or requested other sources of information regarding the family's situation. Because of those concerns, the circuit court decided to rely on a different counselor.

[¶34.] Upon review, the circuit court's decision to rely on testimony from a different counselor has support in the evidence. The circuit court has within its authority the responsibility to weigh and evaluate evidence and to prefer one expert's opinions and observations over others. However, to the extent the circuit court's decision to replace B.P.'s treating counselor was part of a reunification plan as a remedy, and was guided by the misconception of law regarding reunification that we have previously discussed in this opinion, it was an abuse of discretion. We remand for reconsideration of this issue in conformity with this opinion.

[¶35.] ***Delegation to Social Worker***

[¶36.] Next, Nicole argues that the circuit court abused its discretion by delegating its duty to determine the best interests of the child to a social worker.

[¶37.] As previously mentioned, the trial court is allowed to rely on expert testimony when determining what may or may not be in the child's best interests. But the court, as *parens patriae,* is the ultimate decision maker as to the best interests of the child. *Chicoine*, 479 N.W.2d at 893 (stating "the trial court must

-13-

determine from all the facts and circumstances what is in the best interests of the child").

[¶38.] The record does not indicate that the circuit court granted to a third party the ultimate judicial responsibility in this case. Instead, the circuit court's divorce decree ordering visitation states that it may only be modified with the court's confirmation. Here, the circuit court was the final authority as to the best interests of the child; therefore, it did not improperly delegate its authority.

[¶39.] ***Retirement Value***

[¶40.] Lastly, Nicole argues that the circuit court erroneously valued her pension upon its division.

[¶41.] "On review of a property division, this court will not attempt to place valuations on the assets because that is a task for the trial court as the trier of fact. The only time this court interferes with the valuations determined by the trial court is when it has made a clearly erroneous valuation finding." *Geraets v. Geraets*, 1996 S.D. 119, ¶ 7, 554 N.W.2d 198, 200 (quoting *Schumaker v. Schumaker,* 439 N.W.2d 815, 816 (S.D. 1989)). "In divorce proceedings, the date of valuation of the marital estate is generally the date of the granting of the divorce. However, a different date may be used if special circumstances are present." *Duran v. Duran*, 2003 S.D. 15, ¶ 12, 657 N.W.2d 692, 697 (citing *Geraets*, 1996 S.D. 119, ¶¶ 8-9, 554 N.W.2d at 200).

[¶42.] The circuit court valued Nicole's pension account as of the date of the granting of the divorce—$31,576.84. Nicole argues that the circuit court should have valued the pension account as of the date the divorce began—$12,413.14. The circuit court found no special circumstances in this case that would warrant valuing

the pension on another date. The circuit court's valuation of Nicole's pension account is not clearly erroneous.

## Conclusion

[¶43.]    The circuit court erroneously concluded that it could not prohibit visitation between Todd and the children, and the circuit court inappropriately applied the clearly erroneous burden of proof to the allegations of sexual abuse. Those erroneous legal conclusions guided the circuit court's discretion, which is an abuse of discretion. We reverse the circuit court's visitation order and remand to the circuit court to determine whether visitation with Todd is in the children's best interests. On remand, the circuit court may rely on the extensive evidence already presented in the record, or the circuit court, in its discretion, may initiate further fact finding proceedings. We affirm the circuit court's valuation of Nicole's retirement.

[¶44.]    GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and ECKRICH, Circuit Court Judge, concur.

[¶45.]    ECKRICH, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.