STEENSLAND, Respondent, v. STEENSLAND, Appellant.

(179 N. W. 495.)

(File No. 4712. · Opinion filed October 18, 1920.)

1. **Appeals—Error—Alleged Erroneous Admission of Evidence—Received Evidence Maintaining Complaint—Non-prejudicial Error.**

   If some technically erroneous rulings occurred in admission of evidence, yet, evidence received without objection clearly supporting the complaint, such error, if any, was without prejudice.

2. **Same—Evidence Re Immaterial Findings—Necessary Findings Sustained by Evidence, Non-prejudice.**

   Where evidence was received, necssary to support findings essential to sustain plaintiff's judgment, the making of further findings alleged to be unsupported by evidence, is immaterial.

3. **Husband and Wife—Custody of Children—Separate Maintenance—Husband's Drunkenness Sole Cause of Trouble—Repeated Justified Departures of Wife from Home for Husband's Drunken Brutal Abuse—Threats to Crush Her Bones, Choking, Throwing Her on Floor—Wife's Fleeing from House at Night, Husband Locking Door Against Her and Child—Facts Warranting Retention by Wife.**

   Where evidence showed the defendant husband addicted to frequent drunken debauches, the sole cause of family trouble, resulting in her having twice left him and afterwards returned because of his solemn promises to quit drinking, the promises being speedily broken; that his brutal abuse and cruelty frequently recurred, causing the children and even the wife to hide from him in fear; that among his frequent threats he said he

would like to crush every bone in her body, that if it were not for the law he would make her a corpse; that once he was brought home Saturday drunk, came home drunk the following Tuesday, cursing and swearing and next morning he choked her, threw her on the floor, called her several opprobious names, tore her clothes and hair, leaving marks on her arms, that she finally escaped and got out of the house; that the next evening he further threatened her so that she dare not go to bed but took the little girl of seven and after he had retired at midnight went out of doors, he fastening all doors and windows, preventing her from entering, and after a couple of hours he let her in; she telling him she was so nervous she could stand it no longer, he replying he would keep it up until he got rid of her, when she left and soon after commenced suit for custody of children and for separate maintenance; held these facts amply warranted granting her the relief demanded.

4.  Separate Maintenance—Granting Wife Rentals of Mortgaged Farm, and Proceeds After Lease Expired—Spendthrift Husband Ablebodied—Decree Sustained.

Where the sole property of husband and wife was a quarter section of land heavily mortgaged, the mortgage purporting to run to the husband's father, some of the paper being of doubtful validity, the husband being an able-bodied auctioneer capable of earning much more than enough to support himself but being addicted to excessive drunkenness, and having squandered some $50,000 advanced by his father; one of the children being a sufferer from throat trouble requiring medical care at a hospital; the mortgagee having promised, as a bribe to get wife to return to husband, that he would not enforce his claims; held, trial court properly gave wife the rentals of $12 per month under a lease of the farm, and possession and proceeds thereof after termination of lease.

Smith and Gates, JJ., not sitting.

Appeal from Circuit Court, Lincoln County.  Hon. Louis. L. Fleeger, Judge.

Action by Ida Steensland, against John J. Steensland, for possession of minor children and for separate maintenance for plaintiff and children.  From a judgment for plaintiff and from an order denying a new trial, defendant appeals.  Affirmed.

*Kirby, Kirby & Kirby,* for Appellant.

*A. B. Carlson,* for Respondent.

WHITING, J.  The parties hereto are husband and wife. This action was brought by the wife, who sought a decree, grant-

ing to her the possession of their three minor children, and separate maintenance for herself and such children—she did not seek a divorce. She based her right to the relief sought on the drunkenness and resultant cruelty of defendant. Findings and judgment being in her favor, defendant appealed from such judgment and from an order denying a new trial.

Appellant assigns: Errors in admission of evidence; insufficiency of evidence; and excessiveness of allowance for maintenance.

[1] If there were some rulings in admission of evidence that were technically erroneous—a thing we do not feel called upon to decide—yet the evidence received without objection so clearly supported the allegations of the complaint that the errors, if any, in receipt of other evidence were absolutely unprejudiced.

[2] Appellant questions the sufficiency of the evidence to support certain of the findings. Here again we need only say that the facts that are clearly established are such as to fully warrant the court in giving to respondent the custody of the children, and in awarding her separate maintenance; it is therefore of no importance if, as appellant claims, the court went a little too far in findings as to other facts.

[3] The evidence establishes beyond question that his wife and her children are much attached to appellant; that the dearest wish of her life has at all times been that some time a change for the better might come so that she could have that sort of a home which she and the children enjoyed when appellant was not drunk or recovering from the effects of debauch. This drunkenness is concededly the only cause of any trouble in the family. Appellant admits that he is the "black sheep" in his father's family, and his only claim is that he was not as bad as his neighbors and his wife pictured him to be. These people had been married for 22 years, and during the last 15 years respondent had borne what no woman in this day and age is called upon by the laws of our land, to bear from the man who swears that he will cherish and protect her. It is undisputed that twice she had left him and afterwards returned because of his solemn promises to quit the use of intoxicants, which promises were only made to be speedily broken. Counsel for appellant urge that the evidence shows the "sprees"

of their client to have been few and far between, and that there-
fore the wife should have borne with them.  We are not per-
suaded that a woman of refinement, such as respondent appears
to be, is in duty bound to live with a man, even though he be
the father of her children and her wedded husband, and to bear
his abuse and cruelty when he knowingly becomes a mere animal,
without soul or reason, a veritable brute, simply because he does
not sink to the level of the brute but a few times in each year;
but here we have before us a record showing that many times
a year this appellant came to his home in a condition that caused
his children and even respondent to hide from him in fear.  At
different times he had threatened her.  He said he would like to
crush every bone in her body; that he would like to see her
so far in hell that six span of mules could not pull her out again;
that, if it were not for the law back of her, he would make her a
corpse in a hurry; that it would be hard for him to keep from
laughing when the minister preached the sermon over her. She
feared for her personal safety.  The following incidents, occur-
ring during the last week while respondent lived with appellant,
are sufficient, standing alone, to entitle her to the relief granted,
especially in view of the apparent boast on the part of appellant
that he can quit the use of intoxicating liquors at any time he de-
sires, and his virtual admission that he knew he did not treat his
family right when he was drunk: He came or was "brought
home" in a drunken condition on Saturday.  He cursed and
swore.  He was sober and peaceable on Sunday and Monday.
Tuesday he went to town and came home drunk, and cursed and
swore around.  After breakfast the next morning appellant came
where respondent was at work.  He grabbed her, choked her,
threw her on the floor, cursed and swore, called her a lazy brute
and a God damned bitch, tore her clothes, tore down her hair,
and left marks on her arms which remained for a good many
days.  Respondent finally escaped and got out of the house.
On the evening of the next day it seemed like he had got
liquor again, and, when respondent and her baby girl of seven
were alone with him, he cursed and swore, and said he "would
break her so that he could have his booze in the house." That
night she did not dare to go to bed because of his actions.
She took the little girl and sat down, and finally, about midnight

and after he had gone to bed, she went outdoors. He got up and fastened all the doors and windows so that when she attempted to re-enter she could not. She remained out of doors with the little child for a couple of hours, when he finally let her in. At breakfast he swore at her. She told him she was getting so nervous she could not stand it longer. He told her he would keep up his actions until he could get rid of her, and that if she did not like his treatment there was the road. She then left, and soon after commenced this action.

[4] Appellant contends the separate maintenance granted was unconscionable. Neither of these parties had any property other than the home farm. Her health was poor, a condition brought about by his ill treatment. He was an able-bodied man of 44 years of age, an auctioneer capable of earning much more than enough to support himself. He had been a spendthrift having squandered some $50,000 that had been advanced him by his father. The custody and care of the children were granted to her. One of the girls was suffering from a throat trouble requiring medical care, and, at the time of the trial, was in a hospital. Against this home there were of record several mortgages, securing in the aggregate a large sum purporting to be owing appellant's father. There is doubt as to the validity of this paper and to the amount, if any, due thereon. If valid the father may see fit to take the home from respondent and the children, and, as a bribe to get her to return to her husband, he had promised that, in case she did return, he would not enforce his claims. The court, subject to future orders, gave to the wife, the rentals coming under a lease of the home farm, which lease was entered into by appellant after respondent had left; and the court also gave to her the possession of this farm and all proceeds therefrom after the termination of such lease. The farm consisted of 160 acres and was leased for $12 per acre, a total of $1,920 a year. We do not think the judgment of the trial court in the slightest degree unjust to appellant. While we hope and trust that appellant may yet repent of what he has done, and, repenting, so conduct himself that his wife and children will be glad to receive him again in the home, yet, until such time comes, if it ever does come, we trust that appellant will be required to properly maintain those whom he has so grossly wronged.

The judgment and order appealed from are affirmed.

SMITH and GATES, JJ., not sitting.