#25021-a-PER CURIAM
**2009 SD 89**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TROY STAVIG,                                    Plaintiff and Appellee,

  v.

JESSICA STAVIG,                                Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE RONALD K. ROEHR
Judge

* * * *

TIMOTHY J. CUMMINGS
Green, Roby, Oviatt, Cummings &
  Linngren, LLP                              Attorneys for plaintiff
Watertown, South Dakota                      and appellee.

DOUG CUMMINGS
East River Legal Services                    Attorneys for defendant
Sioux Falls, South Dakota                    and appellant.

* * * *

CONSIDERED ON BRIEFS
AUGUST 24, 2009

OPINION FILED 9/30/09

#25021

PER CURIAM

[¶1.]        This is an appeal from an order changing the primary physical custody of Skyler Stavig from his mother, Jessica, to his father, Troy.  We affirm.

FACTS

[¶2.]        Jessica and Troy were married on March 2, 2002.  Their only child, a son named Skyler, was born on June 15, 2002.  When Troy and Jessica divorced in 2006, they agreed that they would have joint legal custody of then four-year-old Skyler, and that Jessica would have primary physical custody.

[¶3.]        Shortly after the divorce, Troy filed a motion seeking temporary custody of Skyler alleging that Jessica compromised Skyler's safety by leaving him in the care of an inappropriate caregiver and by interfering with Troy's visitation.  Troy also asked the trial court to order a custody evaluation with the expenses split between the parties.

[¶4.]        The trial court ordered a custody evaluation to be performed by Dr. Thomas L. Price, a licensed psychologist who has a PhD in Behavioral Medicine.  Dr. Price has completed over one hundred custody evaluations since 1978.  Dr. Price undertook a comprehensive child custody evaluation that utilized a number of sources of data in an attempt to cross-validate information.  Initially, Jessica and Troy were asked to complete a comprehensive history questionnaire designed by a team of psychologists who perform forensics or legal psychological services.  Troy completed the questionnaire; Jessica did not.  Dr. Price then conducted personal interviews with Jessica, Troy, and Skyler and collateral contacts that Jessica and Troy provided.  Dr. Price observed parent-child interactions.  Jessica and Troy also took a series of written and verbal psychological tests to look at their emotional and

psychological functioning, their views of their parenting capacity, and their views of the stress in their relationship. Jessica had also recently undergone a psychological evaluation for medical purposes. While Jessica agreed to provide it to Dr. Price, she never did.

[¶5.]       In accordance with current standards, Dr. Price also screened for domestic violence. He reviewed Jessica's 2005 and 2006 petitions for a protection order and the two ex parte temporary orders of protection that were dismissed prior to hearing. Dr. Price also reviewed Troy's psychological test results and the results of Troy's anger management class where the provider did not perceive Troy to have a significant impulse control problem relating to anger.

[¶6.]       Ultimately, Dr. Price recommended to the trial court that Troy "is the preferred custodial parent." His thirty-eight page report to the trial court concluded:

> Both parents demonstrated some irresponsibility in how they handled aspects of this evaluation. Jessica's exceeded Troy's. She was also found to be more defensive on personality testing, and she'd failed to provide a report of psychological test findings that may have been adverse to her interests. Jessica's leaving Skylar [sic] with an adult with limited capacities is not suggestive of good parental judgment. Troy was more successful in describing how various types of parental situations should be handled.
>
> Although there are advantages and disadvantages to placing a child primarily with the mother or with the father in this case, the examiner's assessment of the data available to him at this point indicates Troy is the preferred custodial parent. There are indications the father tends to be a little more responsible, is more capable of demonstrating good judgment and is somewhat more capable in managing his life. Skylar [sic] is a [sic] more closely bonded to his father. Jessica should of

course have reasonable visitation rights, consistent with the current South Dakota guidelines.

[¶7.]     Jessica's expert, Constance M. Kelso, has a MS in counseling and has been a mental health counselor for emotionally disturbed youth in the Watertown School District for sixteen years.  Jessica asked Kelso to spend time with Skyler due to her concern over his emotional state.  In Kelso's "limited time" with Skyler she found him withdrawn.  On one occasion under questioning Skyler told Kelso that he was afraid of his father.  Kelso recommended more intensive therapy.

[¶8.]     Kelso reviewed Dr. Price's child custody evaluation.  Kelso felt that Dr. Price put very little time or effort into the evaluation.  Kelso found the report lacking because "when there is a history of domestic violence, you really need to focus on contacting third-parties and looking at the history of the violence and how much violence occurred in the presence of child, what the risk is to the child in the future of being subjected to incidents of violence."  Attendance at anger management classes does not necessarily address domestic violence issues and psychological testing does not indicate if a person is a batterer according to Kelso.  Kelso did admit that she does not perform custody evaluations and does not administer psychological tests.  Kelso's sole source of information regarding Troy was Jessica.

[¶9.]     In rendering its decision the trial court found Dr. Price's report and testimony thorough, professional, and helpful.  The trial court gave no weight to Kelso's criticism of that report.  The trial court also did not find Jessica to be a credible witness.

[¶10.]    The trial court found Troy and Jessica "fit parents" who were each able to provide for Skyler's temporal, mental and moral welfare. The court, however, found Troy "a little more able to do so" than Jessica. Both parents were in good mental and physical health. While Troy had a minor problem with anger, the court was concerned that Jessica may suffer from depression and refused to provide a prior pre-surgical psychological evaluation. Both parents had the capacity to provide for Skyler's basic needs. The trial court was concerned that Jessica allowed Skyler to be cared for overnight by a disabled person who required housing, medication, and monitoring to meet his own needs. While both parents had the ability to give Skyler love, affection, guidance, and education, Troy was more inclined to take him to church and Sunday School. In addition, Jessica was not committed to encouraging contact between Skyler and Troy. In considering the prospect of a stable, consistent home environment, the trial court found that Skyler had a good relationship with his parents. Skyler was well-adjusted. He was bonded to both parents, although a little more bonded to Troy as Jessica acknowledged to Dr. Price. The trial court found no evidence of harmful misconduct by either parent.

[¶11.]    The trial court specifically addressed the issue of domestic abuse in its memorandum decision that was incorporated in the findings of fact and conclusions of law:

> In awarding custody, the Court also considers a conviction
> of domestic abuse, a conviction of assault against certain
> persons, and a history of domestic abuse. SDCL 25-4-
> 45.5. Neither parent has any such conviction. Domestic
> abuse is defined as "physical harm, bodily injury, or
> attempts to cause physical harm or bodily injury, or the
> infliction of fear of imminent physical harm or bodily
> injury between family or household members." SDCL 25-

-4-

10-1(1). On two occasions Jessica petitioned the circuit court in Codington County for a protection order for domestic abuse from Troy. On both occasions she had the proceeding dismissed prior to a hearing on her petition. As previously indicated, Troy has a mild anger control problem. During the marriage he would get angry, use vulgar language, and call Jessica names. Sometimes Jessica would respond in kind. Sometimes the parties would engage in shoving or pushing each other; sometimes this shoving and pushing was initiated by Troy. Troy did not hit or injure Jessica. Some of these incidents took place in Skyler's presence. Dr. Price screened for domestic violence; he reviewed the protection order files, Troy's anger management class records, diagnosis and outcome; and he administered his own tests. Dr. Price's conclusion is that Troy's anger is a minor condition.

Considering all the circumstances, the Court concludes that Tyler's [sic] best interests require that Troy have physical custody. Any presumption created by SDCL 25-4-45.5 has been rebutted.

## ISSUE

[¶12.]     **Did the trial court err when it changed primary physical custody from Jessica to Troy?**

## STANDARD OF REVIEW

[¶13.]     When a judgment and decree of divorce is based upon the parties' agreement, custody may be modified in subsequent proceedings without the necessity of a "substantial change in circumstances." Hulm v. Hulm, 484 NW2d 303, 305 (SD 1992) (quoting Williams v. Williams, 425 NW2d 390, 393 (SD 1988)). "Thus, the party seeking modification must only show that the best interests and welfare of the child requires a change of custody." *Hulm*, 484 NW2d at 305. "The best interests of the child are determined by considering the child's temporal,

mental, and moral welfare." Pietrzak v. Schroeder, 2009 SD 1, ¶ 39, 759 NW2d 734, 744.

> It is a poignant reality that when parents contest the custody of their children, a court must make a choice. That choice is often difficult because between two loving parents there may be little to distinguish one over the other. Choosing between two satisfactory options falls within a judge's discretion. Thus, in our review of an ultimate decision on custody, we decide only whether the court abused its discretion. [Fuerstenberg v. Fuerstenberg, 1999 SD 35, ¶ 22, 591 NW2d 798 at 807] (citations omitted). Although we have repeatedly invoked stock definitions, the term "abuse of discretion" defies an easy description. It is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable. *See generally* Adrian v. McKinnie, 2002 SD 10, ¶ 10, 639 NW2d 529, 533 (citations omitted). This standard is the most deferential of appellate review standards, but that does not mean that a judge's custody decision will remain undisturbed. Rather, it is a recognition that trial courts are in a better position to make these difficult choices because the parents are present in the courtroom and the judge is better able to assess their capabilities firsthand.

Arneson v. Arneson, 2003 SD 125, ¶ 14, 670 NW2d 904, 910.

[¶14.] A trial court's findings of fact will be upheld unless clearly erroneous. *Pietrzak,* 2009 SD 1, ¶ 38, 759 NW2d at 744. A trial court's findings of fact will only be overturned on appeal when a complete review of the evidence leaves this Court with a definite and firm conviction that a mistake has been made. *Id.*

## DECISION

### A.

[¶15.] Jessica contends that Troy's history of domestic abuse created a presumption that awarding custody to Troy was not in Skyler's best interest. She

#25021

contends that Troy did not rebut that presumption. Her contention is based on

SDCL 25-4-45.5 which provides:

> In awarding custody involving a minor, the court shall
> consider:
>
> > (1) A conviction of domestic abuse as defined in
> > subdivision 25-10-1(1); or
> >
> > (2) A conviction of assault against a person as
> > defined in subdivision 25-10-1(2), except
> > against any person related by consanguinity,
> > but not living in the same household; or
> >
> > (3) A history of domestic abuse.
>
> The conviction or history of domestic abuse creates a
> rebuttable presumption that awarding custody to the
> abusive parent is not in the best interest of the minor. A
> history of domestic abuse may only be proven by greater
> convincing force of the evidence.[1]

---

1. SDCL 25-4-45.5 and SDCL 25-4-56 (custody and visitation disputes - mediation - exceptions) require proof of a history of domestic abuse "by greater convincing force of the evidence." They are the only current statutes requiring this degree of proof and both were rewritten in 2008.

   Generally proof in a civil case need only be by a preponderance of the evidence. *Matter of Estate of Gibbs*, 490 NW2d 504, 508 (SD 1992). In the late 1990s the State Bar of South Dakota's Civil Pattern Jury Instruction Committee revised the civil jury instructions so that they no longer refer to the burden of proof by a preponderance of the evidence since "[p]reponderance of the evidence is not in common use in our speech today and is more difficult for a juror to comprehend than greater convincing force of the evidence." Comment, South Dakota Pattern Jury Instruction 1-60-10. The committee made clear its belief that "this is not a substantive change in the existing law." *Id.* Accordingly, Pattern Jury Instruction 1-60-10 provides:

   > In civil actions, the party who has the burden of proving an issue must prove that issue by greater convincing force of the evidence.
   >
   > Greater convincing force means that after weighing the evidence on both sides there is enough evidence to convince you that something is more likely true than not true. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue has the greater convincing force, then your finding upon the issue must be against the party who has the burden of proving it. In this action, the plaintiff has the burden of proving the following issues:
   > > (*List issues defendant must prove.)*
   > The defendant has the burden of proving these issues:
   > > (*List issues defendant must prove.)*

(continued . . .)

Under SDCL 25-4-45.7, "in determining whether a history of domestic abuse exists, the court's consideration may include the issuance of a protection order against a parent or any arrest report of a parent following the response of law enforcement to a report of domestic abuse as defined in subdivision 25-10-1(1)."

[¶16.]        The presumption provided for in SDCL 25-4-45.5 is subject to South Dakota's rule on a presumption in civil cases.  SDCL 19-11-1 provides:

> In all civil actions and proceedings, unless otherwise provided for by statute or by chapters 19-9 to 19-18, inclusive, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.  When substantial, credible evidence has been introduced to rebut the presumption, it shall disappear from the action or proceeding, and the jury shall not be instructed thereon.

This rule is essentially Federal Rule of Evidence 301 with the "substantial, credible evidence language" appended to South Dakota's rule.  In re Estate of Dimond, 2008 SD 131, ¶ 7, 759 NW2d 534, 536-537.  The words "substantial, credible evidence" in SDCL 19-11-1 were "ostensibly added to meet the criticism of the federal rule that a scintilla of evidence - enough merely to burst a bubble - is all that is required to

---

(. . . continued)

> In determining whether or not an issue has been proved by greater convincing force of the evidence, you should consider all of the evidence bearing upon that issue, regardless of who produced it.

> This Court has not yet been asked to approve this pattern jury instruction or determine if it does change substantive law.  This Court will not do so now.  We only cite the instruction as the Civil Pattern Jury Instruction Committee's opinion of the definition of "greater convincing force."

overcome the presumption.*" Estate of Dimond*, 2008 SD 131, ¶ 8, 759 NW2d at 537.

We explained:

> Still, going forward with "substantial, credible evidence"
> should not ordinarily be equated with meeting any
> particular burden of proof. Otherwise, the burden of
> producing evidence shifts to become the burden of
> persuasion, contradicting the explicit provisions of the
> rule. A presumption "does not shift . . . the burden of
> proof in the sense of the risk of nonpersuasion[.]" *See*
> SDCL 19-11-1 (Rule 301). Reading this statute as a
> whole, therefore, we deduce that the substantial, credible
> evidence requirement means that a presumption may be
> rebutted or met with such evidence as a trier of fact would
> find sufficient to base a decision on the issue, if no
> contrary evidence was submitted. But mere assertions,
> implausible contentions, and frivolous avowals will not
> avail to defeat a presumption. What may suffice as
> substantial, credible evidence will, of course, vary
> depending on the nature of the presumption. A
> presumption implementing vital public policy, like the
> presumption of legitimacy, for instance, would require
> weighty evidence to surmount it. SDCL 25-4-48; SDCL
> 25-8-57. Conversely, a presumption established primarily
> as a procedural device may require some lesser quantum
> of substantial, credible evidence for rebuttal.

*Estate of Dimond,* 2008 SD 131, ¶ 9, 759 NW2d at 537-538 (footnotes omitted).

B.

[¶17.] In awarding custody, a court is required to consider a conviction of

domestic abuse, a conviction of assault as defined, and a history of domestic abuse.

SDCL 25-4-45.5. In this case the record reflects, and the trial court found, that

neither Jessica nor Troy had any such conviction. The trial court was then charged

with determining if there was a history of domestic abuse. SDCL 25-4-45.5(3).

[¶18.] Domestic abuse is defined as:

> physical harm, bodily injury, or attempts to cause
> physical harm or bodily injury, or the infliction of fear of

> imminent physical harm or bodily injury between family or household members. Any violation of § 25-10-13 or chapter 22-19A or any crime of violence as defined in subdivision 22-1-2(9) constitutes domestic abuse if the underlying criminal act is committed between family or household members.

SDCL 25-10-1(1). Domestic abuse is not reviewed in isolation. There must be a "history" of such abuse. SDCL 25-4-45.5(3). In determining whether a history of abuse exists the court may consider "the issuance of a protection order against a parent" or "any arrest report of a parent following law enforcement response to a report of domestic abuse[.]" SDCL 25-4-45.7. A protection order, SDCL 25-10-1(3) is distinguished from a temporary protection order. SDCL 25-10-1(4). The difference between a temporary protection order and a protection order is significant. An ex-parte temporary protection order may be issued by a court based on an affidavit which alleges that immediate and irreparable injury, loss, or damage will result before an adverse party can be heard in opposition. SDCL 25-10-6. A protection order can only be issued after notice to the opposing party and a hearing where the court finds by a preponderance of the evidence that domestic abuse has taken place. SDCL 25-10-5. In interpreting what is sufficient to constitute a "history of domestic abuse" "[i]t is for the court to weigh the evidence of domestic abuse, its nature, severity, repetition, and to whom directed, not just to be a counter of numbers." In re Marriage of Forbes, 570 NW2d 757, 760 (Iowa 1997).

[¶19.]      In this case Jessica contends that Troy has a history of domestic abuse. Her allegations of domestic abuse do not meet the definition of domestic abuse, SDCL 25-10-1(1), and there is no evidence of the issuance of a protection order or arrest report. SDCL 25-4-45.7. The trial court considered Jessica's recall of events

that she believed constituted the history of domestic abuse and considered Kelso's concern over Troy's domestic abuse based solely on Jessica's account to her. The trial court did not find Jessica to be a credible witness and gave no weight to Kelso's criticism of Dr. Price's evaluation and report. "The credibility of witnesses and the weight afforded to their testimony is . . . within the discretion of the trial court." *Pietrzak,* 2009 SD 1, ¶ 37, 759 NW2d 734, 743. In this case there was mutual shoving, pushing, and vulgarity in language. While there were allegations of domestic abuse, there was not evidence of a history of domestic abuse as required by SDCL 25-4-45.5.

[¶20.]     The trial court carefully considered all of the factors relevant to determining Skyler's best interests in this custody dispute, including those factors in SDCL 25-4-45.5. It made an informed decision after weighing the evidence and having the opportunity to judge the credibility of the parties. It did not abuse its discretion by finding that Skyler's best interests supported Troy's primary physical custody.

[¶21.]     Affirmed.

[¶22.]     GILBERTSON, Chief Justice, KONENKAMP, ZINTER, MEIERHENRY and SEVERSON, Justices, participating.