#27237-a-GAS

**2015 S.D. 84**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TRAVIS JAMES VAN DUYSEN,                    Plaintiff and Appellant,

    v.

JENNIFER MARIE VAN DUYSEN,                    Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BON HOMME COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE GLEN W. ENG
Judge

* * * *

SCOTT R. SWIER
MICHAEL A. HENDERSON
BROOKE SWIER SCHLOSS of
Swier Law Firm, Prof. LLC
Avon, South Dakota                    Attorneys for plaintiff
                                      and appellant.


WANDA HOWEY-FOX of
Harmelink, Fox & Ravnsborg
 Law Office
Yankton, South Dakota                    Attorneys for defendant
                                         and appellee.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 31, 2015

OPINION FILED **11/04/15**

SEVERSON, Justice

[¶1.]		Travis Van Duysen appeals the circuit court's grant of primary physical custody of his two children to their mother Jennifer Van Duysen. Travis asserts that the court abused its discretion when it relied on findings that were unsupported by the evidence. We affirm.

## Background

[¶2.]		Jennifer and Travis Van Duysen were married in 2007. They have two minor children together, a daughter and a son. Their daughter was born in 2005. Jennifer and the daughter lived with Jennifer's parents for some time until Jennifer and Travis married. Their son was born in 2010. In 2011, Travis filed for divorce. Shortly before Travis filed for divorce, Jennifer and the children left the marital home. The details of the argument precipitating the separation were disputed at trial. Jennifer alleges that Travis held her up by the neck; Travis denied this but admitted he grabbed her sweatshirt and spun her around to talk to him. Eventually, the parties agreed to divorce in 2014 on the grounds of irreconcilable differences.

[¶3.]		A two-day court trial was held on June 30 and July 1, 2014. The issues before the court were custody, visitation, child support, attorney fees, and alimony. A home study evaluation recommended granting Travis primary physical custody. The evaluators[1] found Travis to be the favored parent based on the fitness and harmful parental misconduct categories of their evaluation. They found Jennifer to

---

1.		The home study evaluation was done by two evaluators. The "lead" evaluator testified at trial.

be the favored parent in the category of primary caretaker. Finally, the evaluators determined that both parents were equally able to provide stability, noted that child preference was not applicable, and recommended that the children remain together. The court granted Jennifer primary physical custody. Travis appeals. The sole issue on appeal is whether the court abused its discretion in awarding primary physical custody of the children to Jennifer. Travis contends that the court based its decision on findings that were not supported by evidence, thereby abusing its discretion.

## Standard of Review

[¶4.] We review child custody decisions under the abuse of discretion standard. *Pietzrak v. Schroeder*, 2009 S.D. 1, ¶ 37, 759 N.W.2d 734, 743. "The credibility of witnesses and the weight afforded to their testimony is also within the discretion of the [circuit] court." *Id.* "An abuse of discretion occurs in a child custody proceeding when the [circuit] court's review of the traditional factors bearing on the best interests of the child is scant or incomplete. The broad discretion of a trial court in making child custody decisions will only be disturbed upon a finding that the [circuit] court abused its discretion." *Id.*

## Analysis

[¶5.] After the two-day trial, the circuit court noted that the home study evaluation mirrored the *Fuerstenberg* factors, and it discussed each finding, explaining whether it agreed or disagreed based on "the evidence, the credibility, [and] the testimony[.]" *See Fuerstenberg v. Fuerstenberg*, 1999 S.D. 35, 591 N.W.2d 798. The court determined that the evaluators' decision placed great weight on two

incidents that were testified to at length during trial. One such incident involved a dispute at a Christmas program. Travis and his parents took the children to a local church Christmas program. Jennifer came later to pick the children up because Travis's visitation was over. Jennifer testified that she asked her daughter to change her clothes so that the clothes could be returned to Travis. The daughter wanted to keep her clothes, and a tense situation and disagreement between Jennifer, Travis, and the children followed. Many of the details of the incident were disputed at trial. Jennifer allegedly yelled at the children and Travis and then stormed out of the church with the children crying.

[¶6.] The other incident involved what the parties later admitted was an issue of miscommunication. On one of Travis's visitation days, he was late to pick up the children. He failed to inform Jennifer that he was running late. Because Jennifer needed to get to work, she left the children at her parents' house. However, she did not tell Travis where they were until an hour and a half after his scheduled pick-up time. Travis waited, but by the time she called he had already contacted the police, who escorted him to Jennifer's parents' house to get the children.

[¶7.] The court expressed concern that the evaluators' recommendation based on these two incidents was a "simplistic view of the facts" and that the incidents did not directly address how the children were cared for or how they interacted with people. The court noted that Jennifer's behavior was not ideal, but it also stated that it was concerned with the incidents being used to "tip the scales" in favor of Travis. In its findings of fact, the court stated that it did not place great

weight on those two incidents that occurred during the parties' three-year divorce process.

[¶8.]     Ultimately, the court determined that it was in the best interests of the children to remain with Jennifer.[2] It discussed the facts relevant to fitness, stability, primary caretaker, child's preference, harmful parental misconduct, and separation of siblings. It noted that the daughter, the eldest child, was doing very well in school and that she was receiving counseling for her benefit. It further found that the counselor had no concerns about Jennifer's parenting. The counselor had not seen any injuries to the daughter or received any negative comments from her about Jennifer. This contradicted the home study's reiteration of negative comments the daughter made to the evaluators when they talked to her at Travis's home.

[¶9.]     As to the mental and physical health of the parties, the court stated that it was "disregarding" the evaluators' finding that Travis was the favored parent in this category. The court noted that the evaluators based their finding, in part, on other people's observations that the children acted differently when their father would come to get them depending on whether Jennifer was present or not. The court believed that this indicated tension between the parents rather than the fact that there is a problem with Jennifer.

---

2.     Travis acknowledges that the circuit court is not required to follow the home study recommendation and states that he is not appealing the court's rejection of the evaluation. *See Maxner v. Maxner*, 2007 S.D. 30, ¶ 17, 730 N.W.2d 619, 623.

[¶10.]     The court found that the favoring of Travis by the evaluators in the category of harmful parental misconduct also went back to the two incidents discussed above. The court explained that despite those incidents, which did not reflect ideal parenting, placement of the children in either home would not cause injury, damage, or destruction to the children. Instead, the court stated that it was placing great weight on Jennifer being the primary caregiver and the fact that the children need stability.

[¶11.]     As part of its findings of fact, the court expressed concern that Travis's income taxes, which had been submitted into evidence, reflected some "questionable" deductions.[3] When announcing its decision at the end of the trial, the court explained that it looks to income tax returns "to see whether there's truthfulness to people." The court also issued findings of fact that it was concerned about Travis's truthfulness because of his tax returns. Finally, the court made

---

3.     In its findings, the court found:

> The Plaintiff's 2011 federal tax return reflects an expense of $11,255.00 for gas, fuel and oil;
>
> The Plaintiff also claims 100% depreciation for his vehicles;
>
> In this instance, the Plaintiff's tax returns reflect that there is income from a farming operation as well [as] deductions that are questionable for purposes of deduction;
>
> The Plaintiff's tax returns make this [c]ourt concerned about the Plai[n]tiff's truthfulness;
>
> The "IRS apparently does not believe that people cheat on their taxes;" and
>
> Most people believe that they have a 99% chance of not getting caught.

findings related to the IRS. Travis contends that the court's findings based upon Travis's 2011 tax return are clearly erroneous because there is no evidence that he cheated on his tax returns. Further, Travis claims that these erroneous findings led the court to improperly question his credibility, and therefore, the court abused its discretion.

[¶12.] As we have stated before, "[t]he circuit court's 'findings of fact must be supported by the evidence and conclusions of law must in turn be supported by the findings of fact.'" *In re J.D.M.C.*, 2007 S.D. 97, ¶ 18, 739 N.W.2d 796, 803. We have previously explained that the court has broad discretion in child custody matters; "[t]hat broad discretion includes discretion as to what evidence the trier of fact will rely on." *Pieper v. Pieper*, 2013 S.D. 98, ¶ 29, 841 N.W.2d 781, 788. Further, "[t]he credibility of witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence." *Baun v. Estate of Kramlich,* 2003 S.D. 89, ¶ 21, 667 N.W.2d 672, 677.

[¶13.] Nothing in the record indicates whether the deductions are actually questionable or that the depreciation is not accurate or that the IRS believes people cheat on taxes. Further, there was absolutely nothing to suggest that 99% of all people believe that they will not get caught if they cheat on taxes. Although the court had no evidentiary basis on this record to make these findings, this "inclusion of certain unsupported findings . . . is not sufficient cause for reversing a judgment . . . [that] is otherwise sufficiently supported by findings of fact based upon the evidence." *See Mokrejs v. Mokrejs*, 226 N.W. 264, 265 (S.D. 1929) (citing *Steensland*

*v. Steensland*, 43 S.D. 416, 179 N.W. 495 (1920)). "[T]he facts that are clearly established are such as to fully warrant the court in giving [Jennifer] the custody of the children . . . it is therefore of no importance if . . . the court went . . . too far in findings as to other facts." *Steensland*, 43 S.D. 416, 179 N.W. at 496. Indeed, the record establishes that the court heard from several witnesses and had sufficient evidence from which it could determine the best interests of the children. After a review of the entire record, we cannot say that the court abused its discretion when it determined that awarding primary physical custody of the children to their mother was in their best interests. Instead, the court carefully considered factors relevant to the best interests of the children and awarded primary physical custody appropriately. We affirm.

[¶14.]     Both parties have requested attorney's fees. We deny their requests.

[¶15.]     GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN, Justices, concur.