#28510, #28696-a-GAS
**2019 S.D. 24**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SANDRA J. SHELSTAD,                                Plaintiff and Appellant,

    v.

DUANE M. SHELSTAD,                                Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON S. FLEMMER
Judge

* * * *

MICHAEL A. HENDERSON
REBEKKAH J. STEINWAND of
Swier Law Firm, Prof. LLC                      Attorneys for plaintiff and
Sioux Falls, South Dakota                      appellant.


JONATHAN L. GREEN                              Attorney for defendant and
Wahpeton, North Dakota                         appellee.


* * * *

CONSIDERED ON BRIEFS ON
MARCH 25, 2019
OPINION FILED **04/24/19**

SEVERSON, Retired Justice

[¶1.]     Sandra Shelstad brought suit against Duane Shelstad in 2014 for divorce. On May 16, 2014, the circuit court entered a judgment and decree of divorce based on irreconcilable differences, which judgment and decree incorporated the parties' stipulation and agreement regarding property, alimony, child custody, and child support. The stipulation provided that Sandra would have primary physical custody of the parties' minor children. However, shortly after their divorce, issues arose concerning custody, and Duane filed a motion to modify custody to award him primary physical custody of the children. The circuit court granted Duane's motion, and Sandra appeals. We affirm.

## Background

[¶2.]     Sandra and Duane were married in 2007, and two children were born during the marriage. Sandra has three additional children from previous relationships. In 2014, Sandra commenced an action for divorce against Duane. She sought primary physical custody of the parties' minor children; her three additional children were adults at the time of the divorce. In May 2014, the parties executed a stipulation and agreement regarding property, alimony, child custody, and child support. The circuit court entered a judgment and decree of divorce on May 16, 2014 based on irreconcilable differences and incorporated the parties' stipulation and agreement. The stipulation provided that it would be in the best interests of the children that the parents share legal custody and that Sandra have primary physical custody, subject to Duane's right to reasonable and liberal visitation.

[¶3.] Although the parties were able to agree to the terms of their divorce and child custody, the contentious nature of their relationship (during and after their marriage) led to a lengthy battle to modify the custody arrangement. Sandra sought to prove Duane had a history of domestic abuse and was therefore unfit to have custody. Duane sought to prove that he, not Sandra, should have primary physical custody of the children.

[¶4.] As proof of Duane's abusive nature, Sandra presented evidence that he threw a garbage bag at her in 2011, which struck her and cut her face. Duane claimed he believed the bag only contained diapers, but he did not dispute he threw the bag at her during one of their fights. Sandra also presented evidence that Duane was arrested for simple assault in 2012, after she called law enforcement when Duane pushed her and she fell on top of her teenage son. The charge was dismissed.

[¶5.] After Sandra filed for divorce, she sought multiple protection orders against Duane—to protect herself, not the children. One protection order was granted. The rest were either dropped by Sandra or denied because Sandra failed to meet her burden of proof. In 2014, Duane pleaded guilty to violating a protection order. He had called Sandra's place of work three times and also went there to speak to her. In 2015, Sandra called law enforcement, claiming Duane was disorderly in the exchange of the children. Duane was charged but the charge was dismissed. Sandra, at least twice, contacted the Department of Social Services (DSS) and reported possible abuse of her children by Duane. No abuse or neglect was ever substantiated.

[¶6.]     On March 23, 2015, Sandra relocated with the children to Minnesota because she had recently started a relationship with a man from Salol, Minnesota. She informed Duane that her move was authorized pursuant to the parties' stipulation because Duane had been convicted in May 2014 of violating a protection order. Sandra then sought a protection order in Roseau County, Minnesota. The petition was dismissed after a hearing.

[¶7.]     On April 2, 2015, Duane sought immediate temporary custody of the children and requested that the South Dakota court modify custody. The court initially denied the temporary order until it could hold a hearing on Duane's motion to modify but ultimately held a hearing and granted temporary custody to Duane. After a later hearing, the court directed the parties to alternate weeks for visitation until a hearing could be held on Duane's request to modify custody. Between May 7, 2015 and July 2016, the court held multiple hearings related to ancillary matters.

[¶8.]     In August 2016, Sandra filed a motion to modify visitation, and Duane filed a motion for primary physical custody of the children. After a hearing on August 22, the court left primary physical custody with Sandra until a full evidentiary hearing could be held. Between August 22, 2016 and February 15, 2017, multiple additional hearings were held related to ancillary motions and matters.

[¶9.]     On February 15, 2017, the court held an evidentiary hearing on Duane's motion to modify custody. Sandra appeared pro se. Each of her previous five attorneys had sought and obtained permission to withdraw. At the evidentiary hearing, the court heard testimony from Duane, Sandra, a DSS caseworker, a law

enforcement officer, character witnesses for Duane, and the court-appointed child custody evaluator.

[¶10.] Nine months after the hearing, on November 28, 2017, the circuit court issued a twenty-four-page memorandum decision. The court incorporated its memorandum decision into its findings of fact and conclusions of law and order. The court chronicled the parties' motions and the court's hearings spanning the previous three years. Its description of events included details about each filing made by Sandra for protection against Duane. The court also identified Duane's conviction for violating a protection order and the incident involving Duane throwing a garbage bag containing glass at Sandra. In its decision, the court also examined Sandra's other allegations of abuse asserted during the evidentiary hearing. The summary of this background information comprised nine, single-spaced pages of text.

[¶11.] On the question of custody, the court identified that the February 2017 hearing was the first instance in which the court would make a factual custody determination; therefore, Duane did not need to prove a substantial change in circumstances. The court then identified the relevant and necessary factors governing a custody determination, namely parental fitness, stability, primary caretaker, harmful parental conduct, and separation of siblings. The court also examined Sandra's argument that awarding custody to Duane was not in the children's best interest because Duane has a conviction for domestic abuse and, in her view, a history of domestic abuse. *See* SDCL 25-4-45.5(3).

[¶12.]     Although there was no dispute Duane was convicted of violating a protection order, thereby creating a rebuttable presumption that awarding him custody of the children would not be in their best interest, the court found Duane rebutted the presumption "by the greater convincing force of the evidence[.]" The court observed that the conviction arose out of Duane making phone calls to Sandra's work and appearing at her office. The court then examined each alleged instance of abuse identified by Sandra, including the evidence Sandra offered and the testimony of the DSS employee and the law enforcement officer. The court also considered Duane's "interactions with the children, the testimony provided by the witnesses at the hearing and [Duane's] own testimony[.]"

[¶13.]     In the court's view, "[w]hile it is clear that Sandra has a history of reporting Duane for abuse, the evidence presented in this matter clearly does not demonstrate by the greater convincing force of the evidence that Duane has a history of domestic abuse." The court observed that "Duane and Sandra have a very unhealthy relationship." But their unhealthy relationship "does not mean that the evidence has demonstrated that Duane has a history of domestic abuse." The court found "that much of Sandra's testimony at this hearing was not credible."

[¶14.]     In addressing the specific factors relevant to determining custody, the court found Sandra and Duane equally fit as parents and concluded both could provide for the temporal, mental, and moral welfare of their children. The court also found that neither parent qualified as the primary caretaker because both parents had served as primary caretaker. The court deemed both parents financially capable of providing for their children. However, stability favored

Duane, in the court's view, because "[h]e continues to reside in the same home he was in at the time of the divorce and during the marriage" and he had been more stable in regard to employment. The court remarked that Sandra relocated to Minnesota without being certain of employment.

[¶15.]    The court also found Sandra's conduct to be more harmful to the children than Duane's. Sandra involved the children in the custody conflict. Sandra relied on her allegations that Duane was abusive to establish herself as the more suitable primary custodial parent, while Duane brought forth witnesses to attest to his interactions with his children. Sandra used Duane's conviction to move the children over 200 miles away from Duane when "the evidence presented in this case can certainly lead one to conclude that Sandra's move to Minnesota was an attempt to cut Duane out of the children's lives." Sandra did not consider the impact of the move on her children. "Sandra's sole focus seemed to be to establish that Duane was guilty of abusing his children, even though several agencies had determined otherwise."

[¶16.]    The court also considered the issue of separating the children from their older half-siblings. The court recognized that Sandra's adult children were, at the time, attending college in North Dakota and are twelve years older than the minor children. The court also considered that the adult children would have an opportunity to visit the minor children when the children are with Sandra.

[¶17.]    After reviewing "the testimony and evidence presented at the time of the hearing" and the relevant factors governing a custody determination, the court held that the best interest of the children "would be served by modifying the

Judgment and Decree of Divorce to award primary or dominant physical and legal custody of the children to Duane." The court acknowledged that its ruling was contrary to the recommendation of the court-appointed custody evaluator. Yet, the court found it was clear the evaluator "did not have all of the information that the [c]ourt had through the testimony and exhibits that were presented during all three days of the hearing." The court further remarked that "much of the information that was provided to" the evaluator "came directly from Sandra and without the records from DSS[.]"

[¶18.] The court issued an amended judgment, and Sandra timely appealed that judgment to this Court. While the appeal was pending, Sandra filed a motion in circuit court to vacate the circuit court's judgment for lack of subject matter jurisdiction. She claimed the court did not have jurisdiction to determine custody because the children's residence was in Minnesota for the six months preceding the court's custody decision. After a hearing, the circuit court denied Sandra's motion and entered a judgment to that effect, concluding jurisdiction existed via its previous order granting the parties' divorce pursuant to the parties' stipulation and agreement (including as to custody). Sandra timely appealed the court's subsequent order declining to vacate its judgment modifying custody. This Court, by order, consolidated Sandra's appeals.

[¶19.] On appeal, Sandra contends:

1. The circuit court lacked subject matter jurisdiction to determine custody.
2. The circuit court erred in concluding Duane did not have a history of domestic abuse.

3. The circuit court erred in determining Duane overcame the presumption under SDCL 25-4-45.5.

4. The circuit court abused its discretion in awarding primary physical custody to Duane.

## Standard of Review

[¶20.]     Questions of jurisdiction are reviewed de novo. *Reaser v. Reaser*, 2004 S.D. 116, ¶ 27, 688 N.W.2d 429, 437. We review child custody determinations for an abuse of discretion. *Van Duysen v. Van Duysen*, 2015 S.D. 84, ¶ 4, 871 N.W.2d 613, 614. While "[a]n abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence[,]" in a child custody proceeding, an abuse of discretion also occurs when the circuit "court's review of the traditional factors bearing on the best interests of the child is scant or incomplete." *See Pietrzak v. Schroeder*, 2009 S.D. 1, ¶ 37, 759 N.W.2d 734, 743. The circuit court's findings of fact are reviewed for clear error. *Pieper v. Pieper*, 2013 S.D. 98, ¶ 12, 841 N.W.2d 781, 785. This means "[w]e will overturn the trial court's findings of fact on appeal only when a 'complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Schieffer v. Schieffer*, 2013 S.D. 11, ¶ 15, 826 N.W.2d 627, 633).

## Analysis

### 1. Subject Matter Jurisdiction.

[¶21.]     The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) requires that the circuit court establish jurisdiction under SDCL 26-5B-201 before acting as a forum for determining child custody. *Langdeau v. Langdeau*, 2008 S.D. 44, ¶ 15, 751 N.W.2d 722, 728. One way initial jurisdiction exists

includes: "This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]" SDCL 26-5B-201(1).

[¶22.]     Sandra argues the circuit court lacked subject matter jurisdiction under the UCCJEA to modify custody because South Dakota is not the minor children's home state. She highlights that Duane commenced the child custody proceeding after the children had lived with her in Minnesota for more than six months. She further directs this Court to the circuit court's repeated reference to the proceeding being the "first judicial determination of custody" and "initial determination of custody."

[¶23.]     Sandra's argument ignores the exclusive, continuing jurisdiction that existed to modify custody under SDCL 26-5B-202. Duane's motion to modify custody did not *commence* a child custody proceeding. Rather, Sandra commenced a child custody proceeding in May 2014 in South Dakota when she filed a complaint against Duane seeking a divorce and determination of child custody. The South Dakota circuit court then "made a child-custody determination", *see* SDCL 26-5B-202, on May 16, 2014, when it entered a judgment and decree of divorce incorporating the terms of child custody as stated in the parties' stipulation and agreement.

[¶24.]     The fact that the original award of custody to Sandra was by stipulation and agreement (confirmed by a court judgment and decree) or by a

judgment and decree after a contested trial is of no import. *See, e.g., Merrill v. Altman*, 2011 S.D. 94, ¶¶ 2, 22, 807 N.W.2d 821, 822, 826. Equally not controlling on the question of jurisdiction under the UCCJEA is the circuit court's statements that its decision was an "initial custody determination" and a "first judicial determination of custody." *See Moulton v. Moulton*, 2017 S.D. 73, ¶ 10, 904 N.W.2d 68, 72. Those statements were made in relation to Duane's evidentiary burden on his motion to modify the custody arrangement incorporated into the parties' judgment and decree of divorce. Finally, we note that Sandra made no request or showing to the circuit court for a determination that its exclusive, continuing jurisdiction had ceased under SDCL 26-5B-202. Because the circuit court made an initial custody determination for purposes of the UCCJEA on May 16, 2014, the circuit court retained exclusive, continuing jurisdiction under SDCL 26-5B-202. The court did not err in denying Sandra's motion to vacate.

## 2. History of Domestic Abuse under SDCL 25-4-45.5(3).

[¶25.] When making a custody determination, the circuit court "is required to consider a conviction of domestic abuse, a conviction of assault as defined, and a history of domestic abuse." *Stavig v. Stavig*, 2009 S.D. 89, ¶ 17, 774 N.W.2d 454, 460–61 (citing SDCL 25-4-45.5). A "conviction or history of domestic abuse creates a rebuttable presumption that awarding custody to the abusive parent is not in the best interest of the minor." SDCL 25-4-45.5. However, "[a] history of domestic abuse may only be proven by greater convincing force of the evidence." *Id.*

[¶26.] Duane was convicted of violating a protection order entered in favor of Sandra. Because the conviction constitutes domestic abuse, the circuit court

appropriately required Duane to rebut the presumption against a custody award in his favor. Sandra, however, contends that Duane, in addition to his one conviction for domestic abuse, has a history of domestic abuse. She argues the circuit court's conclusion to the contrary "is completely inconsistent with the evidence and constitutes a clear abuse of discretion."

[¶27.] The circuit court examined each claimed instance of abuse alleged by Sandra, some of which were investigated by law enforcement and DSS. The court then gauged the credibility of the witnesses and weighed the testimony and evidence. Ultimately, the court found that Sandra failed to prove—by greater convincing force of the evidence—that Duane has a history of domestic abuse. In doing so, the court regarded "much of Sandra's testimony at this hearing" as "not credible." "[W]e give due regard to the [circuit] court's opportunity to observe the witnesses and the evidence." *McCollam v. Cahill*, 2009 S.D. 34, ¶ 6, 766 N.W.2d 171, 174. From our review, the circuit court did not err or abuse its discretion when it concluded Duane did not have a history of domestic abuse.

### 3. Rebuttable Presumption under SDCL 25-4-45.5.

[¶28.] Duane's conviction of domestic abuse (violating a protection order) created a "rebuttable presumption that awarding" custody to him is not in the children's best interest. *See* SDCL 25-4-45.5. Sandra contends the circuit court declared the presumption rebutted on mere evidence of "the time [Duane] spent with the children, interacted with them, and participated in events with them." She argues the circuit court should have required Duane to present evidence that "the issues that led to his previous behavior are no longer a concern."

[¶29.] While Sandra is correct—the court considered Duane's interactions with the children—Sandra ignores the additional evidence relied upon by the circuit court. Again, the circuit court found much of Sandra's testimony at the hearing not credible. The court further noted the circumstances surrounding Duane's conviction, namely that he made phone calls to Sandra's work and went to her office. Finally, and importantly, the circuit court examined each alleged instance of abuse asserted by Sandra, the nature of the parties' contentious and unhealthy relationship, and the character testimony offered by Duane's witnesses.

[¶30.] SDCL 19-19-301 provides that a presumption can be rebutted with "substantial, credible evidence[.]" In *In re Estate of Dimond*, we explained that "the substantial, credible evidence requirement means that a presumption may be rebutted or met with such evidence as a trier of fact would find sufficient to base a decision on the issue, if no contrary evidence was submitted." 2008 S.D. 131, ¶ 9, 759 N.W.2d 534, 538. "[M]ere assertions, implausible contentions, and frivolous avowals will not avail to defeat a presumption." *Id.* From our review, Duane relied on more than mere assertions, implausible contentions, and frivolous avowals. Therefore, the circuit court did not abuse its discretion or err when it concluded Duane presented substantial, credible evidence to rebut the presumption under SDCL 25-4-45.5(3). *See Stavig*, 2009 S.D. 89, ¶ 16, 774 N.W.2d at 460.

### 4. Custody Award to Duane.

[¶31.] Sandra acknowledges the circuit court applied the factors relevant to a child custody determination. She, however, contends the "court's application of these factors was flawed and resulted in an abuse of discretion." She challenges the

circuit court's decision to favor Duane on the stability factor because, in her view, the reasoning was "wholly inadequate and blatantly unfair." We disagree.

[¶32.]    The court found that Duane had lived in the marital home before and after the divorce, while Sandra moved the kids over 200 miles away so she could be closer to her boyfriend. Duane has had the same job for six years, while Sandra relocated to Minnesota with her children without planned employment. These facts Sandra does not dispute. Rather, she disagrees with the weight given to the evidence by the circuit court. But we do not re-weigh evidence or reverse when the record supports the court's findings. Indeed, "the court has broad discretion in child custody matters; '[t]hat broad discretion includes discretion as to what evidence the trier of fact will rely on.'" *Van Duysen*, 2015 S.D. 84, ¶ 12, 871 N.W.2d at 616 (citation omitted).

[¶33.]    Next, Sandra takes issue with the circuit court's conclusion that she engaged in more harmful parental conduct than Duane. She claims the circuit court punished her for exercising her statutory right under SDCL 25-4A-17 to relocate with the children without prior notice to Duane. She compares the court's negative treatment of her decision to move against the court's more favorable treatment of Duane's conviction of violating a protection order and his multiple arrests. In her view, the court's conclusion was "against all logic and reason[.]"

[¶34.]    The circuit court recognized Sandra had a statutory right to relocate with the children without notice to Duane. The court, however, delved deeper into Sandra's actual reason for moving and determined it was harmful to the children. In particular, the court observed that she exercised her statutory right without

regard to the effect of that decision on the children. She examined no alternatives before moving. And she made her decision to move almost a year after Duane's conviction. The record makes clear the court did not isolate its review of harmful parental conduct on Sandra's decision to move. The court considered the entirety of the parties' relationship, including that Sandra attempted to drive a wedge between Duane and the children and Duane's physical aggression toward Sandra. The court also considered the circumstances surrounding Duane's conviction, namely that the children were not involved. From our review, the court's decision that Sandra engaged in more harmful parental conduct was reasoned, logical, and supported by the evidence.

[¶35.]    Sandra also challenges the circuit court's determinations related to who was the primary caretaker and whether both parents are equally fit to provide for the children. She offers little in the way of evidence or argument against the circuit court's findings. She contends she was the primary caretaker because she had primary physical custody. But this factor looks to "which parent has been more responsible to the child in the past." *Fuerstenberg v. Fuerstenberg*, 1999 S.D. 35, ¶ 28, 591 N.W.2d 798, 808. The evidence supports that Duane *and* Sandra have been responsible to the children in the past, albeit at different times. The evidence similarly supports the circuit court's determination that both Sandra and Duane are fit parents.

[¶36.]    After examining the record, the court's incorporated memorandum decision, and the court's findings and conclusions, we believe the circuit court delivered a "balanced and methodical" decision, specifically focused on the best

interests of the children.  *See id.* ¶ 35.  Indeed, "our brightest beacon remains the best interests of the child."  *Zepeda v. Zepeda*, 2001 S.D. 101, ¶ 13, 632 N.W.2d 48, 53.  Because the record supports the court's decision to award primary physical and legal custody to Duane, we conclude the circuit court did not abuse its discretion.

[¶37.]     Affirmed.

[¶38.]     GILBERTSON, Chief Justice, and KERN, JENSEN, and SALTER, Justices, concur.